WATKINS *vs.* STOCKETT'S Adm'r. *D. B. N. et al.*

APPEAL from the court of chancery. The bill of complaint in this case was filed by *L. Stockett,* the executrix and devisee of *John Stockett,* and on her death a bill of revivor was filed in the names of the administrator, *de bonis non* of *John Stockett,* and of the executor and devisee of *L. Stockett,* (now appellees.) The original bill was for the purpose of redeeming a tract of land, and some slaves, which were conveyed by *John Stockett* to the defendant, (now appellant,) by deed dated the 28th of June 1816. The deed purports, on its face, to be an absolute conveyance, but is alleged by the bill to have been intended as a mortgage, and to have been executed to secure the repayment of a sum of money which the defendant lent to *Stockett* about the time the deed was executed.

A full statement of the case is given in the opinions delivered by the chancellor, and by this court.

KILTY, Chancellor, (December term 1820.) This case was fully argued at an early period of the present term, and has remained on a suggestion made by the court, as to the parties, which has been acted on by the counsel on each side. The object of the bill is to compel the defendant to reconvey the property mentioned in the deed exhibited, on the repayment of the sum intended to be secured. The deed is in form an absolute conveyance, but is alleged to have been intended as a mortgage. The defendant, in his answer, states the execution of the deed, and charges, that on the day he advanced and lent to *J. Stockett* the sum mentioned as the consideration, but that there were other sums due. I consider this part of the answer conclusive as to the deed being in the nature of a mortgage, and the property redeemable, notwithstanding the allegation in another part of the answer that the deed was declared by *J. Stockett* to be an absolute conveyance; and it will be observed, there is an admission that it was understood between

Fraud may be inferred from facts and circumstances, from the character of the contract, or from the condition and circumstances of the parties. Parol evidence is inadmissible to vary or contradict the clear import of a written instrument, as well in equity as at law, except where fraud is charged, or in cases of trusts. Unless fraud in obtaining a contract is *charged* in the complainants bill, parol evidence of it cannot be received. Where the defendants answer to a bill alleging a contract to have been entered into by *mistake,* denies the mistake, the strongest proof is necessary to destroy the effect of the denial. *S.* executes in favour of *W.* an absolute deed, on its face, of his real and personal estate, for a certain momed consideration stated by the deed to have been paid by *W,* and then dies. In a bill filed by *S's* representatives, stating that the deed was intended as a mortgage only, and praying to redeem, and *W.* in his answer, denying that the deed was intended as a mortgage, and insisting that it was designed to be an absolute conveyance— *Held,* under all the circumstances, that the complainants were not entitled to relief.

the parties that the property was to be used and enjoyed by J. Stockett during his life.

It appeared to be admitted also in the argument, that there was not a purchase or sale in the ordinary way, nor a full consideration expressed, and that therefore debts were afterwards paid by *N. Watkins.*

The evidence taken on the commission is contradictory, but need not be recapitulated, as it would be extraordinary if any could be produced sufficient to counteract the effect of the answer. The complainant is therefore entitled to relief upon the terms which he offers, to wit, the payment of the sum intended to be secured, with interest; and to ascertain what that sum is, an account will be necessary. *Decreed,* that the parties account with each other touching the matters referred to in the premises, and that the auditor state an account between them in the usual manner, and return the same to this court for further order or decree.

The auditor reported sundry accounts stated by him, numbered A, B, and C. The complainants excepted to accounts A and C, and insisted that account B was the correct one. The defendant excepted to all of the accounts.

JOHNSON, Chancellor, (July Term 1822.) On the 28th June 1816, *John Stockett,* in consideration of $810 paid, conveyed to *Nicholas Watkins* two pieces of land, and six slaves. The conveyance, on the face of the deed, was absolute. *John Stockett* remained in the possession of all the property until his death. The present bill was filed by his widow, the devisee and executrix, to redeem the land on the payment of the sum of money found due to the defendant, on the foundation that the deed was executed, not on a sale of the land, but to secure the payment of a sum of money due to the defendant. On the hearing of the cause, my predecessor was of the opinion the deed must be considered only as a mortgage, and on the 28th of February 1821, passed an interlocutory decree, for an account; in pursuance thereof, on the 21st of September following, a report was made by the auditor, which contains three statements; the first account A, prepared in compliance with the instructions of the defendant, makes the sum due to him to be $4430 13; account B, prepared in pursuance of the complainant's directions, makes the

1825.

Watkins
vs
Stockett

sum due to the defendants $1064 21; and by account C, made out by the auditor, in conformity with the view taken by him of the cause, the sum due amounts to $2033 94. As then the deed in question can only be considered a mortgage, several questions naturally arise: *First.* Supposing the deed on its face had purported to secure the sum of $810 as then due from the mortgagor, could any proof be received to increase that debt, by claims taking their origin anterior to its execution? *Second.* If such evidence, under any circumstances, is admissible, is there in this cause any proof that can enlarge the debt? And, *Third.* Will the circumstance of the deed being absolute, when it should only have been a mortgage, vary the case so as to admit of proof that would have been rejected, if the true nature of the transaction had been disclosed on the face of the deed?

When men of sufficient understanding come to a settlement of their various transactions, and enter into solemn instruments of writing purporting to settle the amount due from the one to the other, such adjustments should not be shaken except on the most irrefragable proof, that adhering to the settlement would be productive of clear and evident injustice. It is not the retaining, in the possession of one of the parties, papers and documents that ought to have been delivered to the other, that will be sufficient to defeat the settlement; the party complaining, before he can affect the adjustment that has taken place, must surcharge and falsify, that is, he must establish that just and sustainable claims on his part had not been brought into the settlement, and, as I conclude, give some valid reason why they were not so brought in; or must, by evidence clear and incontrovertible, prove that some of the items admitted were false. These principles must be adhered to, or settlements, which ought to be of vast importance, must pass away as of little importance in dealings between man and man. If then the deed in question had purported to secure the payment of the sum stated as its consideration, before any evidence could have been received to establish a larger or a smaller sum to be due, the sum must stand, until defeated in the manner before mentioned. The converse course of putting the parties to ascertain the items by which the aggregate was made up, could not be resorted to, as such a rule would of necessity give no effect whatever to the settlement that had been made.

It may then be asked; is there any evidence by which it appears how the sum of $810, the consideration for the deed, was made out? The auditor, in his account, conjectures certain items as being component parts of that sum; but even with them he is driven again to conjecture how the difference between the items he mentions, and the sum stated for the consideration, was made out; but by such a process of reasoning the settlement itself is not to be shaken, and of course it must follow that the sum explicitly stated to be due, if the deed had been so drawn, would have stood and remained immoveable. Is there then in this cause, admitting that under some circumstances evidence is properly admissible to enlarge the claim, such as can enlarge it? The question has nearly, if not entirely, been determined by what has preceded, and yet on its consideration it may be proper to take a more minute notice of the evidence itself.

Except with what is disclosed in regard to the proof on exhibit D, which relates to a transaction as early as the 21st of April 1808, no dealings appear between *John Stockett*, deceased, and the defendant, and the claim set up on that account, by the exceptions on the part of the defendant, was at the argument abandoned. The first dealings then, having a relation to the cause commenced on the 10th of February 1812, when the exhibit B of that date was executed, and by which *John Stockett* is made to transfer his claim on *John Rawlings*, for 250 acres of land, sold by the former to the latter at £5 pr. acre, the whole amounting in dollars to 3333 33⅓ cents, in consideration of $500 alleged to be paid to him by *N. Watkins*, and this transfer, as well as the deed before mentioned, is absolute; and yet, exclusive of other proof, there is on the face of the instrument itself sufficient to create very reasonable doubts whether it was not executed merely to enable *N. Watkins* to collect the claim for *John Stockett*. There is nothing in the cause to prove that *John Rawlings* had paid any part of the debt before assignment.

*John Stockett*, (to use the language of *Thomas H. Bowie*, a witness on the part of the defendant,) "was a very weak man, and very intemperate, incoherent and wild, in his conversation," more than four years after he had employed (because not adequate of himself,) *N. Watkins*, the defendant, who is the reverse of a weak man, comes to a

settlement with him, and executes a deed, that has been determined was to secure the sum due; what sum? certainly the whole amount; and therefore, if any thing more was then due, it would have been included in the consideration.

On an examination of all the items demanded by *N. Watkins*, even including the exhibit D, it will be found they will not amount to the assigned claim on *Rawlings*, supposing the whole to have been due when assigned, and no evidence of a payment appears.

On the 19th of February 1810, *Stockett* gave his note to *N. Watkins* for $500, only nine days after the assignment, and for the same sum as is expressed for the consideration of the debt itself. On the 20th of March 1812, the notes from *Stockett* to *Nicholas Watkins*, for £74 11 6, which afterwards came into the hands of *John Duvall*, the administrator of *Rawlings*, the debtor of *Stockett*, was taken up by him, and accounted for in his settlement with *N. Watkins*, the attorney in fact of *Stockett*, the real creditor of *Rawlings*, by discounting, no doubt, the one from the other. The note for the $500, as well as the claim on account of the debt due from *Stockett* to *Nicholson*, were no doubt embraced in the settlement made between *Stockett* and *N. Watkins* on the 22d of February 1814, when the latter obtained from the former a receipt in "full amount of my claims against *John Rawling's* estate for the land sold to said *Rawlings*." See the defendant's exhibit D. When the $40 were paid to *Thomas H. Bowie*, and the $63 10 to *B. Welsh*, does not appear; and before they can be added to the mortgage debt they must have been made after the deed was executed, or they must come in under evidence surcharging and falsifying. On the whole of the case, if the manner the deed was drawn and executed does not vary the cause from the predicament it would have stood in, supposing the deed to have purported to have been a mortgage, then the sum stated to be secured, and no other, could have been demanded. In respect to the third question, I shall only remark, that the concealment of the real nature of a transaction can never give to the party concealing an advantage, that a full disclosure of the truth of the case would have deprived him of; and therefore, in this case, as in the event of the deed having disclosed itself to have been a mortgage, there is no evidence that

could justify a departure from the sum mentioned; so will not the deed, as it stands, vary the cause. The exceptions taken on the part of the complainants, are ruled good, and those by the defendant overruled. But in order to raise the money due to the defendant, and as stated in account B—*Decreed*, that unless the complainants bring into court, to be paid to the defendant, $1064 21, with interest on $810, a part thereof, from the 21st of September 1821, on or before, &c. the land and property in the deed from *John Stockett* to the defendant, dated the 28th of June 1816, or so much thereof as shall be sufficient. shall be sold, &c. From these decrees the defendant appealed to to this court.

The cause was argued at June term last, before Buchanan, Ch. J. Earle, Martin, and Archer, J.

*T. B. Dorsey*, (Attorney General,) and *Ridout*, for the Appellant, contended, 1. That the deed. purporting on its face to be an absolute conveyance, and the bill containing no allegation of fraud, mistake or surprise, in obtaining its execution, parol evidence was inadmissible to vary its terms, and prove it to have been a mortgage.

2. If parol evidence could have been received, the testimony in the cause does not show the deed to have been intended as a mortgage, but on the contrary, most distinctly proves, that it was designed to be an absolute conveyance.

3. The answer contains no admission that the deed was intended as a mortgage, nor any thing which could justify the court in inferring such an admission, in opposition to the positive averment of the answer to the contrary, and in opposition to the testimony in the cause.

4. Supposing the deed to have been intended as a mortgage, and the appellees entitled to redeem, still they cannot do so without paying a much larger sum than they are directed to pay by the chancellor's decree.

On the *first point*, they relied on *Wesley et al. vs. Thomas*, (ante 24.)

On the *fourth point*, to *Powell on Mort.* 399, 400, 405, 406.

*Magruder* and *Boyle*, for the Appellees, referred to *Taylor vs. Haylin*, 2 *Bro. Chan. Ca.* 310. *Johnson vs. Curtis*, 3 *Bro. Chan. Ca.* 266. *Stapilton vs. Stapilton*, 1 *Atk.* 1

2 *Fonbl.* 263, *(note* h,*)* and *England vs. Codrington,* 1825.

1 *Eden,* 169.

*Cur. adv. vult.*

Watkins
vs
Stockett

ARCHER, J. at this term, delivered the opinion of the court. In this case the appellees filed a bill in the court of chancery, stating that *John Stockett,* on the 28th day of June 1816, executed an absolute deed, purporting to convey to *Nicholas Watkins* of *Thomas,* sundry parcels of land, and several negroes, and charges, that it was the intention of the parties that it should be only a mortgage, and that it was designed to secure the payment of a sum of money loaned by *Watkins* about that time to *Stockett.* That *Stockett,* notwithstanding the conveyance, remained in possession until the time of his death, and that the consideration was greatly less than it was really worth. The bill prays a reconveyance of the property to the complainant, who is the devisee and executrix of *John Stockett,* upon the repayment, with interest, of the sum actually intended to be secured by said deed; and the respondent is particularly interrogated and required to answer what sum of money was loaned by him to *John Stockett,* at what times, and for what purpose.

The answer of *Watkins* states, that on the day of the execution of the deed, he advanced and lent to *Stockett* the consideration expressed in the deed; that *Stockett* was in debt to him in other and large sums of money, for services rendered, and for monies advanced and paid, and also for the sum of \$500, lent to him on the 19th of February 1810, for which he held the respondent's note; and expressly states, that the deed, at the time of its execution, was considered and declared to be by *Stockett* an absolute conveyance, and was executed, not only in consideration of the sum therein expressed, but in consideration of the services rendered, and the sums advanced, as above stated; and that it was understood between *Stockett,* and himself, that the land and negroes conveyed were to be possessed, used and enjoyed, by *Stockett,* during his life, and that at his death they were to vest in the respondent in full property and possession.

By the evidence in the cause, it appears that *Stockett* and *Watkins* both applied to a conveyancer to draw a deed for the land; that instructions were given by one or both, both

being present, to draw an absolute deed; that *Stockett*, previous to the execution of the deed, had declared to several persons his determination that his relatives should enjoy no benefit from his property, having been illy treated by them; and that he meant to convey it to one of *Watkins's* children; that he was a weak man, and intemperate; that upon several occasions, when claims were presented to him for payment, he declared he had no property, that what he was in possession of, belonged to *Watkins*. That *Watkins*, at different times after the execution of the deed, declared to several persons, among others to Mrs. *Stockett*, after the death of her husband, that he had an absolute conveyance for the land and slaves, and that he spoke of claims which he had against the estate of *Stockett* after his death. The property conveyed is proved to have been worth about $2700. The claims which *Watkins* had against *Stockett* are variously represented. He stated an account against him which, even excluding the consideration money mentioned in the deed, amounted to upwards of $2700.

By the auditor's report, claims were allowed to *Watkins*, which, with interest on them from their date to the day of the execution of the deed, would amount to about the sum of $1700. Some of *Watkins's* claim, consisting of items of a considerable amount, were disallowed by the auditor as of a doubtful character, the proof adduced in their support being deemed by that officer insufficient. The chancellor considered the deed to be a mortgage, and having ascertained the amount of *Watkins's* claim against *Stockett*, decreed the land, conveyed by the deed, to be sold for the payment of the claim. From this decree the present appeal has been taken.

It is an admitted principle that fraud may be inferred from facts and circumstances, from the character of the contract, or from the condition and circumstances of the parties. *Chesterfield vs. Jansen*, 1 *Ves.* 155. *Newl. on Cont.* 352.

The evidence upon which the fraud in this case is attempted to be founded, arises from *the inadequacy of the price, the state of mind of the grantor in the deed*, and from the circumstance of the grantor's remaining in possession of the property after the execution of the deed, until his death. Mere inadequacy of price, unaccompanied with any circumstances, indicating that the grantor

did not understand his bargain, or was so oppressed that he was glad to make it, knowing its inadequacy, may be a sufficient intention of fraud. *Heathcoat vs. Pagnon*, 2 *Bro. Cha. Ca.* 175. The ignorance of the grantor can be inferred neither from the inadequacy of the consideration, nor from any evidence in the cause, but on the contrary is expressly contradicted. The conveyancer was especially instructed, either by him or in his presence, to pass an absolute estate. No room is left for the inference of circumvention or fraud. He transferred his estate with his eyes acknowledgedly open to the nature and quality of the estate, which was transferred, and was intended to be transferred. He does not, it is true, appear to be a man possessing dexterity in the management of his affairs, on the contrary is said, in the language of one of the witnesses in the cause, to have been a weak man; but the nature and character of that mental imbecility is unknown to the court. It no where appears that he was incapable of transacting the ordinary affairs of life, or was peculiarly liable to imposition from the artful and designing, nor does it appear that any efforts were made to take advantage of this alleged imbecility. In the case of *Clarkson vs. Hanway*, 2 *P. Wms.* 213, a deed was set aside, where the inadequacy of price was of so glaring a character that it would be impossible to state it to a man of common sense, without an exclamation at its inequality, and when proof was exhibited that the grantor was of weak mind, of great age, and easily imposed upon; but in this determination much stress was laid upon the absence of all evidence to show, that the grantor had ever given any instructions to the conveyancer to prepare the deed, and that they had in fact been given by the grantee; which circumstances were pointed at as strongly evincive of fraud. In *Griffin vs. Deveville*, 3 *P. Wms.* 103, *(note)* the Lord Chancellor remarks, that in almost every case upon this subject, a principal ingredient is a degree of weakness little short of legal incapacity. The party must be more liable to imposition than the generality of mankind. It was observed by a distinguished jurist, Sir *Joseph Jekyll*, that where a weak man gives a bond, if there be no fraud nor breach of trust in its obtention, equity will not set aside the bond, for the weakness of the obligor alone, if he be *compos men-*

1825.

Watkins
vs
Stockett

1825.

Watkins
vs
Stockett

*tis.* Nor will a court of equity measure the size of men's understanding and capacity, there being no such thing as an equitable incapacity where there is a legal capacity. This is undoubtedly the safest doctrine, where there is a total absence of all fraud and imposition.

Neither fraud nor an original intention to execute a mortgage, could be inferred from the grantor's remaining in possession. As against creditors, that circumstance might furnish, in connexion with other testimony, evidence of an original fraudulent intent. But it is difficult to conceive how the grantor's remaining in possession, with the toleration and by the permission of the grantee, and from mere forbearance towards him, will enable his devisee, or legal representatives, to set up fraud from this circumstance. Fraud cannot be intended or presumed, (per Lord Ch. J. *Treby,* in *Bath vs. Montague,* 3 *Cha. Ca.* 106.) To set aside the deed, or give it a different efficacy from that which it naturally and legally imports, so far as the grantee, or his legal representatives, are concerned, would, against the defendant's answer, require not only the allegation, but the most unequivocal evidences of fraud on the part of the grantee.

Where fraud exists equity will interpose, and make the contract conformable to the intention of the parties. It has been decided, that where a plaintiff filed a bill to redeem an annuity, and it became a question whether parol evidence could be admitted to show the intention of the parties that the annuity should be redeemable, but no clause to that effect had been inserted in the deed, that if the clause had been omitted, or varied by fraud, the evidence would be admissible. 1 *Bro. Ch. Ca.* 91. Parol evidence is inadmissible to vary or contradict the clear, certain, and unequivocal import of a written instrument; and the rule of evidence is the same at law as in equity, except where fraud is charged, or in cases of trusts where, in order to get at the real intention of a trust, or use declared under deeds for the sake of justice and equity, an inquiry will be permitted into the real merits of the case. 2 *Atkins,* 229. It would indeed lead to infinite mischief if writings, which show clearly the agreement of parties, were permitted to be contradicted, and new stipulations interpolated. There would be no security in property, and no faith

1825

Watkins
vs
Stockett

reposed in the most solemn conventions. Indeed where fraud is charged, and the evidence establishes it, it has been remarked, that the statute of frauds may very properly be put out of the way, since the object of such evidence is not properly to contradict the instrument, but to raise an equity *de hors* the instrument, in contradiction of an intent which no law or statute will be suffered to assist or protect; and so, where mistakes are proved to exist, a court of equity will reform the contract. The cases under this head are digested in *Sugden*, and the power of the court to interfere seems to be indisputable.

The decree of the court of chancery seems to be bottomed on the answer of the defendant, as containing an admission of the original intent of the parties that the instrument should have been a mortgage. It is inconceivable upon what ground this deduction could have been made. The respondent is specially interrogated by the bill as to the amount of the monies loaned. The answer states the amount loaned, at the time of the execution of the deed, as previous thereto, and it explicitly declares, that these sums, and other debts at the time existing, constituted, unitedly, the consideration, and that an absolute deed was expressly agreed to be made.

It must be remarked, that fraud is not alleged as a ground for the interposition of a court of equity in this case; and without this allegation, proof of fraud would be inadmissible, according to the determination of this court in the case of *Westly vs. Thomas*. And if we infer the allegation of a mistake from the general charge of the bill, the evidence conclusively shows the original design to have been to execute an absolute conveyance. The answer denies the existence of a mistake, and in such cases there should be the strongest possible proof. Lord *Thurlow*, in *Innham vs. Child*, 1 *Bro. Ch. Ca.* 92, said, that the proof of a mistake should be established as much to the satisfaction of the court as if it were admitted, and *that the difficulty of doing this is so great, that there is no instance of its prevailing against a party insisting there is no mistake.*

DECREE REVERSED.