OWINGS & PIET, use of OWINGS, *vs*. HENDERSON P. LOW. *June*, 1833.

In an action for goods sold and delivered, a clerk of the plaintiff may give evidence of the delivery of goods, by referring to entries in the plaintiff's books made by such clerk, testifying to his belief of their truth at the time of making them, and proving generally the dealings of the defendant with the plaintiff for such articles as those charged by the clerk; but he cannot establish such a delivery, by reference to entries made by the plaintiff or other clerks, of which he has no knowledge other than that arising from the course of business of the plaintiff's store.

There is no usage in this State which makes the books of accounts of a storekeeper, evidence *per se*, upon proof that he is a man of integrity.

Pending an action brought by O and P, as partners, for certain hardware sold and delivered, the partnership was dissolved, and the interest of P in the effects of the firm assigned to O for value.   The suit was then enter-

ed for his use. At the trial the defendant proved that during the partnership one of the plaintiff's informed the witness, that they had an interest of three-fourths in certain houses building on F street by the defendant, and that the defendant was to take hardware for that interest. The defendant then proposed to prove, that in a conversation *after the dissolution,* P informed the witness, that the plaintiffs had taken an interest of *three-fourths of a house* in the houses aforesaid, and the plaintiffs were to give defendant the hardware for which this suit was brought, for such interest. The County Court admitted the evidence, but this court upon appeal, decided it to be incompetent.

Declarations of a partner, made after dissolution, cannot *per se,* establish a contract against his co-partner.

The declarations of an agent, in relation to his agency, made subsequent to its execution, when his authority was *functus officio,* are not evidence against his principal.

Courts of common law have, to a limited extent, for the purposes of justice, recognized the interests of the assignees of legal *choses in action;* and by a summary equitable jurisdiction, exerted on motion, they will protect those assignees against such acts or admissions of their assignors, as would operate in fraud of their rights. This protection is afforded, whether the defence arises upon plea, or appears upon evidence under the general issue.

Where O and P were partners in trade, and upon the dissolution, P assigned for value, all his interest in the partnership effects to O, a court of law will not permit P by his mere declaration made after such assignment to defeat an action brought in their joint names.

The plaintiff upon the record at common law, cannot, unless he voluntarily waive his privilege, be compelled to give testimony for the defendant.

The case of *Wood, et al,* assignees of *Hussey, et al, vs. Braddock,* 1 *Taunt.* 104, overruled.

APPEAL from *Baltimore* County Court.

Action of *Assumpsit* for goods sold and delivered brought by *Owings & Piet vs. Low.*

This case was decided by the Court of Appeals at June term, 1826, 7 *Harr. and Johns.* 124, reversing the judgment of the County Court in favor of the defendant, upon the appeal of the plaintiffs, the present appellants, and sending the case back with a *procedendo.*

1. Upon the second trial the plaintiffs offered to give in evidence by one *Alexander Manro,* a competent witness, that during the years 1818, and a part of 1819, he and one

*John Dukehart, Jr.*, were clerks in the employ of the plaintiffs, who carried on the hardware business in the city of *Baltimore.* That during that time various articles of hardware were sold and delivered to defendant. That sometimes the things were delivered by witness to defendant, or his order; sometimes by plaintiffs, or one of them; and sometimes by said *Dukehart.* That the charges for the same on the day book of plaintiffs, now produced, were at times made by witness, or by one or the other of said persons. That all the things charged by himself he knows were delivered as charged, because he never made such charges without delivery. And that it was the constant usage of the said plaintiffs, and *Dukehart,* never to make entries in the book without a like delivery. That witness, during the whole of the period of the said charges, was constantly in said store of plaintiffs, except when he was at his meals, and at night, after the hours of business; and occasionally out of the store upon other business, which was but seldom. That he knows that in some cases some of said charges were made by one of the plaintiffs, when he, witness, was attending to the delivery of the articles. That when this was the case, the witness called to the said plaintiff, a list of the items delivered, when he, plaintiff, was at the desk, and with the said book before him; but he is not able to particularize the said charges, nor does he know that in such instances he examined, after said charges were made, to see if they were correct, nor can he now tell whether they are correct. In some cases, however, of that sort, there are charges in witness's hand writing on the same day, and immediately preceeding or following said charges by plaintiffs, or *Dukehart,* and he thinks it is probable he may have seen said charges. He is sure he never did see any instance of any such charges being made when the goods were not delivered, nor does he know whether or not such charges, or any charges except those in his hand writing, were correctly or incorrectly made; nor has he any recollection of the delivery of any particular article so

charged, except his belief arising from the facts before sta-
ted, and because he knows the said plaintiffs to have been
correct and honest men, who would not make false charges
in their books.   Whereupon the plaintiffs by their counsel
offered to give said evidence of said witness, and all of said
charges against defendant, from said day book, as well those
in the hand writing of witness, as those in the hand wri-
ting of plaintiff, or *Dukehart*, for the purpose of charging
the defendant in this action, with the value of all the said
articles charged in said book, during said period to the de-
fendant.   To the admissibility of which evidence, (except
the evidence of the entries actually made by the witnesses,
and as to the goods and amounts, and particulars comprised
in such entries,) the defendant objected ; which objection
the court, (ARCHER, Ch. J.,) sustained.   The plaintiffs ex-
cepted.

The plaintiffs then gave in evidence by the said *John
Dukehart, Junior*, in the plaintiffs' first exception men-
tioned, that he was a clerk in the employ of the plaintiffs, from
October, 1818, to the termination of the partnership of the
said plaintiffs, as hereinafter given in evidence by them.
That during that time, he knows that at various periods, sun-
dry articles of hardware of the said plaintiffs were delivered
either to defendant, or to his order, and charged to defen-
dant's account by his defendant's direction.   That sometime
in the month of April, in the year 1819, the plaintiffs
stopped delivering any more hardware to defendant, when
defendant called upon plaintiffs to know the cause, when
he was told by them, that they could not deliver any more to
him, unless he would pay or settle for the amount then
delivered, and he then told plaintiffs, (and offered to do so,)
that he would give his note for $1000, endorsed by one
*John Walsh*, and *Walsh's* note for $1000, endorsed by de-
fendant; the amount delivered of said hardware up to this
time, being estimated or supposed to be $2000.   That
plaintiffs agreed to this, and the notes were then drawn, and
for a few days, some other small amount of hardware was

delivered to defendant, or his order, when defendant in-
formed plaintiffs, that he could not comply with his agree-
ment to give said notes, because said *Walsh* refused to
execute them.   The plaintiffs then stopped delivering any
more hardware to defendant.   The plaintiffs further gave
in evidence the following paper, for the purpose of proving
a dissolution of said partnership of plaintiffs, and the
assignment of all *Piet's* interest in the property of, and
debts due said firm, to *James Owings*, one of the plaintiffs,
and which said paper is admitted to be in the hand writing
of *John Piet* the other plaintiff.

"*Baltimore*, June 8th, 1820.   Received of *James Ow-
ings*, nine hundred and twenty-two dollars and fifty-five
cents, in full payment of all my part of the goods, notes
and accounts of the firm of *Owings* and *Piet*, which I had
on concern, which was this day dissolved by mutual con-
sent.   *John Piet*.   Witness, *John Dukehart, Jr.*"

And the defendant thereupon offered in evidence, by
*Ignatius Boarman*, that in the latter part of the year 1818,
the witness went with a certain *John Walsh*, to the store
of the plaintiffs, in order to obtain hardware for certain
houses in *Franklin* street, in the city of *Baltimore*.   That
*Walsh* told the plaintiffs to furnish the said hardware on
account of said houses.   That *Piet*, one of the plaintiffs,
proceeded to charge the said hardware to the witness,
against which the witness objected, and that said *Piet* then
told the witness, that the plaintiffs, in the first instance,
charged the hardware got for said houses, against the per-
sons who got the same, and meant when all the houses
were finished, to turn it over against the houses, on account
of their interest in the said houses.   That witness was told by
the plaintiffs in conversation, during the copartnership, that
they had an interest of three-fourths in the said houses in
*Franklin* street, building by *Low*, and that *Low* was to
take hardware for that interest.   That witness was asked
by the plaintiff *Owings*, what witness thought of his bar-
gain, to take the said interest for hardware, when witness

told him he thought it was worth nothing. The defendant further then offered to prove by said *Boarman*, that after the dissolution of the partnership of said plaintiffs, that plaintiff, *Piet*, again informed witness, that the plaintiffs had taken an interest of three-fourths of a house, in the houses aforesaid, in *Franklin* street, and that the plaintiffs were to give said *Low* hardware, for which this suit was brought for the said interest. The plaintiffs gave in evidence, that before said witness was called, the suit had been entered for said *Owings'* use, but that it was entered on the day when he was called, and that such use was so entered by the order of plaintiff's counsel; to the admissibility of which said latter declaration, as made by said *Piet*, after said dissolution and assignment of said partnership of plaintiffs, as said dissolution and assignment are proved by the plaintiffs, they objected; but the court (ARCHER, Ch. J.) overruled the objection, and permitted the same to be given in evidence to the Jury.

The plaintiffs excepted, and the verdict and judgment being against them, they prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Gill*, for the appellants contended, upon the first exception, that the evidence of *Manroe*, proposed to be given, and rejected, was admissible under the circumstances, as part of the *res gestæ*. That the book mentioned in said proposed evidence, was admissible upon the same principle; that the entries therein, being made in the ordinary course of business, were admissible as confirmatory evidence, and necessary for that purpose. *Case vs. Potter*, 8 *Johns. Rep.* 211. *Vosburgh vs. Thayer*, 12 *Ib.* 461.

2. That after the dissolution of the partnership, and the assignment by *Piet* of his interest therein to *Owings*, and after the bringing of the suit, *Piet* could do no act to discharge such suit, and therefore his declarations made sub-

sequently were not evidence. *Frear vs. Evertson*, 20 *Johns. Rep.* 142. *Baker vs. Stackpole*, 9 *Cowen*, 433.

3. That as *Piet* had no interest in the suit, being only a nominal party, he was a competent witness for the defendant, and his declarations consequently could not be given in evidence. *Thomas vs. Denning*, 3 *Harr. & Johns.* 242.

*Moale* and *Mayer* for the appellee.

1. The *usage* which prevails in *New York*, in regard to the admissibility of entries made by the parties themselves in their books, does not obtain in this *State*, and consequently the cases referred to on the other side, can have no bearing upon the judgment of this court.

The acts of 1729, *ch.* 20, and 1795, *ch.* 46, are conclusive to show the absence of any such usage. Nor can the plaintiffs avail themselves of the doctrine of *res gestæ*, that being only applicable, when the *thing* in relation to which it is asserted, is proved to be done. But here, the very question is, were the articles charged, sold, and delivered, and until that is proved, no foundation is laid for the application of the *res gestæ*. Upon this exception they cited, *Digby vs. Stedman, et al.* 1 *Esp. Cases*, 328. *Price vs. Earl of Torrington*, 1 *Salk*, 285. *Pitman vs. Maddox*, 2 *Ib.* 690. 1 *Phillips' Ev.* 195, note (*a*). *Calvert vs. Archbishop of Canterbury*, 2 *Esp. Rep.* 646. 1 *Stark. Ev.* 72. *Pritt, et al. vs. Fairclough, et al.* 3 *Camp. Reps.* 305. *Harrison vs. Blades, et al. Ib.* 457.

2. The declarations of *Piet* were evidence against the plaintiffs. Every thing which occurs during the partnership, in relation to the business of the concern, is evidence against the partners; and the admissions of either of them, though made after the dissolution, are admissible in behalf of third persons, to defeat a partnership demand. *Wood vs. Braddick*, 1 *Taunt.* 104. 1 *Saund. P. and Ev.* 62. *Lucas et al. vs. De La Cour*, 1 *Maule & Selw.* 254. *Van Reimsdyk vs. Kane, et al*, 1 *Gallison Rep.* 631.

The object of the proof was not to charge the partners, but to show the nature of a contract made during its continuance. *Ward vs. Howell, 5 Harr. and Johns.* 60.

It was not competent to the defendant, to examine *Piet* as a witness; at least he could not do so, without releasing him from his responsibility for costs, which he was under no obligation to do.

The declarations of the plaintiffs on the record, are always admissible to defeat the action, though he is a mere trustee. *Lovelace vs. Curry,* 7 *Term. Rep.* 633. *Lucas et al. vs. De La Cour,* 1 *Maul. and Selw.* 249.

But at all events the declarations of *Piet,* are evidence against himself; and the action being a *joint* one, for the recovery of a *joint* debt, the plaintiffs must fail, if the evidence shows that one of them has no claim. The plaintiffs declare for a joint claim, and cannot be permitted to recover for a separate one.

It does not appear that the defendant had notice of the assignment to *Owings,* until the paper was produced at the trial, which distinguished it from the case in *New York.*

The consent of *Piet alone* would not have made him a witness. *Owings's* consent must also have been obtained. *Frear vs. Evertson,* 20 *Johns.* 142. But if his *single* consent would have been sufficient, still, as he could not be *forced* to testify, his declarations could be proved. *The City Bank, Baltimore, vs. Bateman,* 7 *Harr. and Johns.* 108. *Wood vs. Braddick,* 1 *Taunt.* 104.

*Johnson* in reply.

1. The opinion of the court, in the first exception precluded the plaintiffs from recovering the price of any of the articles, except those, which were delivered and charged by the witness himself; though some of those which were charged by the plaintiff, were delivered by the same witness. In relation to these, at least the evidence was suffi-

cient to go to the jury, as tending to prove the sale and delivery.

2. In regard to the admissibility of the declarations of parties, the rule is the same with respect to plaintiffs and defendants, and in reference to the latter, it is well settled that the admissions of a partner, after dissolution, are not evidence to charge his former partner. 5 *Harr. and Johns.* 60.

The ground upon which such evidence is excluded, is, that after the dissolution of the partnership, the parties have ceased to be the agents of each other. And it is not material whether the agreement proposed to be proved by *Piet*, was made before or after the dissolution. If before, still *subsequent* declarations by *Piet*, in relation to it are not evidence against *Owings*, because then he had no authority to speak for him.

DORSEY J., delivered the opinion of the court.

From the opinion of the County Court in the first bill of exceptions, we do not feel ourselves at liberty to dissent. The testimony given by the witness, except as it relates to his own entries in the day book, was of a character so vague and indefinite, that upon no sound principles of reasoning or inference, could the jury have made it the basis of a verdict for the plaintiffs. The court therefore were right in instructing them, of its legal insufficiency for the purpose for which it was offered. To establish the entries made by *Dukehart*, it has not, even in the argument been pretended, that it was available. To sustain those made by the plaintiff, it was so destitute of every thing like precision or certainty to any intent, that the court acted wisely in withdrawing it from the consideration of the jury.

The cases referred to from *New York*, in which, by a local usage, the books of accounts kept by creditors themselves, who are proved to have been of fair character, and correct in their dealings, are sufficient evidence before a jury to establish such accounts, it cannot be necessary to re-

mark are of no authority in this State, where such an usage not only never existed, but is at war with all the acts of our legislature, in relation to proving accounts, and the uniform decisions of our courts of justice upon the subject.

In permitting the testimony objected to, in the second bill of exceptions, to go to the jury, we think the County Court erred. The declarations of *Piet* were made after the dissolution of the partnership; and consequently after all power had been withdrawn from him, either by word or deed, to create any new contract obligatory upon *Owings*, his former partner. The incompetency of partners to bind each other after dissolution, applies as well to cases in which they sue in the character of plaintiffs, as to those in which they stand in the attitude of defendants. Did the declarations of *Piet* assert the evidence of a partnership contract, of which, no other evidence had been previously offered, presents itself to our inquiry? Of this there can be no doubt. The only proof before produced to defeat the plaintiffs claim was, that the hardware charged in their account was not to be paid for by *Low*, but furnished by the plaintiff's under a special contract, which secured to them, as its equivalent, an interest of three-fourths in the houses to be built upon *Franklin* street. Instead of relying on this agreement, the defendant offers the declarations of *Piet* made after the dissolution of the partnership, to prove a new and entirely different contract, by which the plaintiffs are said to have " taken an interest of three-fourths of a house in the houses aforesaid on *Franklin* street, and that the plaintiffs were to give said *Low* hardware, for which this suit was brought for the said interest." To support the opinion of the County Court, the case of *Wood and others*, assignees of *Hussey and others vs. Braddick*, 1 *Taunt.* 104, has been referred to, and that case, it must be admitted, does go the whole length of the decision made by the County Court.

But to the principle there established, we never can assent. The question was, whether certain merchandize had

been consigned to *Cox and Braddick*, or to *Cox* alone, and without any other proof than a letter from *Cox* written four years after the dissolution of the partnership; it was held, that the consignment was made to the firm, and not to *Cox.* With as much propriety might it be insisted, that the declarations of an agent in relation to his agency, made long subsequent to the execution thereof, when his authority was *functus officio*, were evidence against his principal. If the letter of *Cox* had been the statement of some fact, in relation to a contract, into which it had been proved by other testimony, that he and his partner had entered; as for example, that a certain balance was still due, or that the contract on their part had not been complied with, the admissibility of the evidence might have been insisted on, with some plausibility; and it would not have been without analogies in the law to sustain it.    As where two persons give a joint and several note; the admissions of one of them that the note was unpaid, or the like, would be evidence against both.    But to permit one partner, after the dissolution of the partnership, by his simple declarations, to impose upon his former co-partner any contract which he in said declarations may see fit to state, as having originated anterior to the dissolution, appears to us a solecism in the law, and productive of consequences so ruinous and unjust, that if sanctioned, no prudent man would ever form a co-partnership.    That such a principle does not prevail in *Maryland*, is settled by the decision of this court, in *Ward vs. Howell and others*, 5 *Harr. and Johns.* 60.

In *New York*, the doctrine, that the admissions of a partner after dissolution, as to transactions during the partnership, are not evidence to bind the other partners, is put to rest by numerous decisions; and they draw no distinction between such admissions, when made of a contract of which they are the only evidence, and where made in relation to a contract substantiated by other testimony.    *Baker vs. Stackpole*, 9 *Cowen* 433, and the cases there referred to.

It is said however, that no matter whether the admissions of *Piet* bind *Owings* or not, they are admissible against him who made them, and are sufficient to bar his recovery; and it being a joint action at law, there cannot be a separate judgment in favor of one of the plaintiffs.

In refusing to permit the defendant to set up such a defence, we think the County Court, under the circumstances of this case, were clearly right. Long before the declarations offered in evidence were made, *Piet* had for a valuable consideration, assigned all his interest in the cause of action to his co-partner. To permit him afterwards, by his simple declarations or admissions to defeat such claim would be a fraud upon *Owings*, which nothing but an imperious obligation to submit to some inflexible principle of law, would induce us to tolerate. None such exists in this case. Courts of common law have long since recognized to a limited extent, for the purposes of justice, the interests of the assignees of legal *choses in action;* and by a summary equitable jurisdiction exerted on motion, they will protect those assignees, against such acts or admissions of their assignors, as would operate in fraud of their rights. This protection is afforded by refusing to permit the defendant to avail himself of the defence thus furnished him, whether attempted to be asserted in the form of a plea, or by way of evidence under the general issue. As authorities for such a practice, see *Frear vs. Evertson,* 20 *Johns.* 142. *Jones vs. Witter,* 13 *Massa.* 304. *Jenkins vs. Brewster,* 14 *Massa* 291. *Legh vs. Legh,* 1 *Boss. & Pul.* 447. *Jones and Matthews vs. Herbert,* 7 *Taunt.* 421. *Hickey vs. Burt,* 7 *Taunt.* 48. *Skaife and Caris vs. Jackson,* 3 *B. and C.* 421.

It has been contended, that the case of *Thomas' Exec'r vs. Denning* use of *Page,* 3 *Harr. and Johns.* 242, was a conclusive authority, that no such practice existed in this State. But such an inference is not warranted by that case, whatever may have been the opinion of the reporters on that subject. The judgment no doubt rested on the

fact, that the nominal was the real plaintiff, there being no evidence that the *chose in action* had ever been assigned.

To evade the force of this necessary and wholesome exercise of equitable jurisdiction by courts of common law, it has been insisted, that the essential ingredient to warrant its exertion is wanting, to wit, a previous notice of the assignment to the defendant. But such notice under the circumstances of this case, is wholly immaterial. The want of it has subjected him to neither detriment nor inconvenience; he has done nothing in ignorance, which he would not have done with full knowledge of the assignment.

The inadmissibility of the evidence was pressed upon another ground; that *Piet* having no beneficial interest in the controversy, he could have been called as a witness, and therefore his declarations were inadmissible, not being the best evidence of which the nature of the case would admit. But from this position we must dissent. The plaintiff upon the record at common law, cannot, unless he voluntarily waive his privilege, be compelled to give testimony for the defendant. Such a voluntary waiver, he, the defendant, was neither bound to have anticipated nor accepted. Indeed, if the decision before cited from 20 *Johns.* is to be respected, *Piet* could not have been received as a witness, but by the assent of *Owings, the cestui que use.* The competency of the testimony offered, stands unaffected by this objection.

We concur with the County Court, in their opinion, in the first bill of exceptions, but dissenting from that, in the second, we reverse their judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.