THOMAS B. CRAWFORD AND DAVID CRAWFORD, ADMR'S OF DAVID CRAWFORD, *vs.* JOHN B. BROOKE, TRUSTEE.—*December* 1846.

*H,* in consideration of love and affection for his children, assigned to *J,* an account for medical services rendered, and medicines furnished to *C,* in trust, "that the proceeds of the said account when collected, after deducting the expenses thereof, shall be immediately applied to the exclusive benefit and advantage of his children, by *J,* the trustee." In an action by *J* against *C,* to recover the amount of the account, *H,* the assignor, is a competent witness to prove the rendition of the services by himself, and a promise to pay the same within three years before the institution of the suit.

When objection is made to the competency of a witness, upon the ground of interest, the inquiry is, whether he is interested at the moment his testimony is tendered to the court?—if he then has no interest, he is competent.

A legal, certain, and immediate interest, in the event of the suit itself, or in the record as an instrument of evidence, in support of his own claims in a subsequent action, is necessary to render a witness incompetent.

When the plaintiff claims under an assignment, in virtue of the act of 1829, ch. 51, the defendant may prove, that it was not made *bona fide.*

So when the assignor was examined as a witness, to sustain the right of action of his assignee under that act, the defendant may ask the witness, whether his account had, or had not, been assigned, because of its being barred by limitations, and for the purpose of making himself a witness to prove the rendition of the services charged therein, and the promise of the defendant to pay the same.

The defendant may impeach an assignment made for such purposes, on the ground of fraud.

When the plaintiff claimed as trustee, in virtue of a purely voluntary assignment, and as assignee, under the act of 1829, ch. 51, and the assignor was offered as a witness to sustain the claim, the defendant may examine into the motives for making the assignment.

Crawford *vs.* Brooke.—1846.

When such an assignment was made, to enable the assignor to become a witness, and thus remove the bar of limitations, it cannot be regarded as *bona fide* made, within the act of 1829.

An account for medical services and the sale of medicine, is a *chose in action* for the payment of money.

By the act of 1829, ch. 51, no discrimination is made between express and implied contracts. Both are within the act, when the contract assigned is for the payment of money only.

In declaring under such an assignment, the plaintiff need neither aver a promise by the defendant to pay him the account, nor that he was *bona fide* entitled to the account, nor that it was *bona fide* assigned to him.

APPEAL from *Prince George's* county court.

This was an action of *assumpsit*, commenced on the 13th March 1843, by the appellee against the appellants. The claim was for medical services and medicines, rendered to *David Crawford* by *Hodges* and *Brooke*, from 1834 to 1839, amounting to $619.69. The appellants pleaded *non assumpsit*, and limitations.

The plaintiff claimed, in his declaration, as the assignee of *Hodges* and *Brooke*, under the act of 1829, ch. 51. The assignment to the account, relied upon in the pleadings and evidence, was as follows:—

"In consideration of the natural love and affection which we bear to our several and respective children, we, and each of us, do hereby grant, bargain, transfer, assign and set over, all our respective right, title, interest and claim, of, in and to, the within account, to *John B. Brooke*, upon the following trust, to wit, that the proceeds of said account, when collected, after deducting the expenses thereof, shall be immediately applied, according to our respective interests therein, to the exclusive benefit and advantage of our several children, by the said *John B. Brooke*, trustee as aforesaid, as witness our hands this first day of March, 1843.     B. B. HODGES,

HENRY BROOKE."

"Witness,—DANIEL C. DIGGES."

There was a verdict for the plaintiff and a motion in arrest of the judgment. .

1st. Because it is not averred in either of the counts in the declaration, that the plaintiff was *bona fide* entitled to the account mentioned in the same, by virtue of the assignment.

2nd. Because it does not appear, by the said pleadings, that said account was *bona fide* assigned.

The county court overruled the motion, and entered judgment for the plaintiff.

1ST EXCEPTION. At the trial of this cause the plaintiff, to maintain the issues joined on his part, offered in evidence to the jury the aforesaid account, and the assignment thereon, which is admitted to have been signed and delivered to the plaintiff, by *B. B. Hodges* and *Henry Brooke*. And offered to prove, by *Henry Brooke*, a member of the firm of *Hodges & Brooke*, and one of the said assignors, that the services charged in the said account, were rendered by the said firm to the said *David Crawford*, deceased, at his instance and request; and that in June, 1841, the witness called on the said *David Crawford*, in his lifetime, and presented the said account for payment, when the said deceased acknowledged the same to be correct, and promised to pay it.

The defendants objected to the admissibility of this proof, on the ground, that the said witness was one of the original creditors in said account, and incompetent to prove the said acknowledgment and promise, and the rendition of said services.

But the court, (MAGRUDER, C. J., and KEY, A. J.,) were of opinion that said testimony was admissible, and overruled the objection, and permitted the same to go to the jury; the defendants excepted.

2ND EXCEPTION. After the preceding testimony had gone to the jury, which by agreement is made a part of this, the defendants asked the said *Henry Brooke*, who was under cross-examination, whether the said assignment on said account was or was not made, because the said account was barred by limitations; and for the purpose of making himself a witness to prove the rendition of said services, and the said acknowledgment and promise by the said *David Crawford*, deceased? The defendants' counsel stated, that they asked this question for the purpose of shewing, that the said account had not been *bona fide* assigned, as required by the act of Assembly, in such case made and provided. But the plaintiff's counsel objected

to this question being propounded to the witness, because, it appearing upon the face of the assignment that the same was made upon a good consideration and *bona fide*, it was not competent for the defendants, in this mode, and by this witness, to prove the fact which they proposed to prove by the question so propounded.

The court sustained the objection to the right of the defendants to propound the said question; the defendants, by their counsel, excepted.

3RD EXCEPTION. The defendants then prayed the court to instruct the jury, that upon the testimony contained in the first exception, and which by agreement is made a part of this, if the same be believed by the jury, the plaintiff is not entitled to recover :

1st. Because the said account is not such a *chose in action*, for the payment of money, as is assignable under the act of Assembly, to enable the assignee to sue in his own name.

2nd. Because there is no proof in the cause, that the defendants, as administrators of the said *David Crawford*, made to the plaintiff any acknowledgment or promise, to pay him the said claim after the said assignment was made.

But the court overruled the defendants' prayer, and refused to instruct the jury as prayed; the defendants excepted.

The defendants appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, and MARTIN, J.

By TUCK and BOWIE, for the appellant, and
By J. JOHNSON and D. C. DIGGES, for the appellees.

MARTIN, J., delivered the opinion of this court :

This was an action of *assumpsit*, instituted by the appellee as the assignee of an account due to *Messrs. Hodges* and *Brooke*, for medical services rendered, and medicines furnished to *David Crawford*, the intestate. The appellant pleaded *non assumpsit*, and limitations, and upon those pleas issues were joined.

The assignment was as follows :—

" In consideration of the natural love and affection we bear our several and respective children, we and each of us, do hereby grant, bargain, transfer, assign and set over, all our respective right, title, interest and claim, of, in, and to, the within account, to *John B. Brooke*, upon the following trust, to wit, that the proceeds of said account, when collected, after deducting the expenses thereof, shall be immediately applied, according to our respective interests therein; to the exclusive benefit and advantage of our several children, by the said *John B. Brooke*, trustee, as aforesaid."

At the trial of the cause, the plaintiff below offered *Henry Brooke*, one of the assignors, as a witness, to prove the rendition of the services charged in the account, and an acknowledgment of, and promise to pay, the same, by the intestate, within three years before the institution of the suit.

The defendant objected to the competency of this witness, but the court overruled the objection; and the correctness of the opinion of the court on this question, forms the subject of the first exception.

The fact, that the witness offered by the plaintiff was one of the assignors, constituted in itself no objection to his competency, if he had parted with his whole interest in the claim, and could neither gain, nor lose, by the event of the suit. When objection is made to the competency of a witness, upon the ground of interest, the inquiry is not, whether he was originally interested; but, is he interested at the moment his testimony is tendered to the court? And if it appears at the time he is presented to the court, he has no interest in the result of the controversy, the circumstance that he was once the owner of the cause of action, and has assigned it, interposes no obstacle to his examination. This is clear upon principle, and has been directly decided. 9 *Wend.*, 295. 3 *Bin.*, 313. 1 *Raw.* 434.

In the case of *Stimmel against Underwood*, 3 *G. & J.*, 287, the Court of Appeals have defined the kind of interest which will exclude a witness from testifying in a cause. They determine, that it must be a legal interest, and that a mere honorary obligation will not render him incompetent. This

28    v.4

rule upon the subject of interest, remained unsettled until the decision of the court of King's Bench, in *Belt against Baker*, 3 *Term.*, 27; but it is now established, that the only cases, in which, for this cause, a witness is incompetent, are, where he has a legal, certain, and immediate, interest in the event of the suit itself; or in the record, as an instrument of evidence, in support of his own claims in a subsequent action. *Doe vs. Tyler*, 6 *Bing.*, 390. 1 *Greenl. Ev.*, 432. Applying this test to the competency of the witness, we can discover no reason for excluding him.

It is certainly true, that where the situation of the witness is such, that he would become responsible to the party by whom he is required to give testimony, for the expenses which might be incurred in the prosecution of a claim, in case of defeat, he is incompetent; for he has a direct interest in sustaining the cause of the party by whom he is called. 3 *C. & Pai.*, 571. And if the counsel for the appellants could have maintained their proposition, that the assignor was responsible to the plaintiff below, for the expenses to which he might be subjected in a contest for this debt, they would have shown a case in which the witness was to be excluded. But such is not the predicament of the witness. The assignment provides, that the expenses are to be paid out of the fund, when collected; and on the contingency of the plaintiff failing in the action, and being, therefore, obliged to pay the costs of the suit, there could be deduced from this assignment, voluntary as it is in its character, no legal obligation express or implied, to indemnify the plaintiff for the expenses thus incurred by him. The fact, that the witness might consider the circumstances under which the assignment was made, as imposing upon his honor an obligation to protect his trustee from loss, is an objection which would go only to his credibility. We think, therefore, that the court below decided correctly, in permitting the witness to be examined.

The decision, however, of the court below, in the second exception, presents a very different question.

It is stated, that after the witness had been examined in chief, the defendant, for the purpose of showing that the

account had not been *bona fide* assigned, as required by the act of Assembly, proposed to ask the witness : "whether the assignment of the account had or had not been made, because of its being barred by limitations; and for the purpose of making himself a witness to prove the rendition of the services charged therein; and the promise of the defendant's intestate to pay the same." The counsel for the plaintiff objected to this question being propounded to the witness, and the objection having been sustained by the court, the correctness of their opinion, in this respect, becomes also the subject of examination.

It is clear, that it was competent for the defendant, on the pleadings in the cause, to prove that the account in question had not been *bona fide* assigned, as required by the act of Assembly of 1829, ch. 51. The suit was brought in the name of the assignee, under the provisions of that statute, which enables the *bona fide* assignee of a chose in action, for the payment of money, to maintain an action in his own name. The objection, that the plaintiff was not a *bona fide* assignee of this account, and was not therefore embraced by the provisions of the act of Assembly, went directly to his right to recover, and was admissible upon the plea of *non assumpsit*. The assignment was necessarily exhibited by the plaintiff, as constituting his title to sue, and was liable to be attacked by his adversary, on the ground of the fraudulent character of the transaction.

It has, however, been contended by the counsel for the appellee, that the evidence proposed to be offered, was inadmissible, because the effect of it was to contradict, or explain the terms of the written assignment. And in support of the proposition, the cases of *Bend against The Susquehanna Bridge Company*, 6 *H. & J.*, 128; *Watkins vs. Stockett*, 6 *H. & J.*, 444; *and Westly vs. Thomas*, 6 *H. & J.*, 24; have been referred to. Those cases recognise the familiar principle, that it is not in the power of a party, except on the ground of a fraud or mistake, to contradict by parol evidence the instrument which he has signed, or to interpolate into it, new terms and stipulations.

But a clear view of the object for which this testimony was offered, will show, that its admissibility was unaffected by the decisions to which we have been referred; and, that it is not obnoxious to any just exception. It was not proposed for the purpose of contradicting the assignment, or of ingrafting upon it any new or additional consideration. The defendant admitted that the assignment was purely voluntary, and that the proceeds of the account, when collected, were to be applied by the trustee, for the exclusive benefit of the *cestui que trusts*. The question propounded to the witness, was to discover the motive by which he was governed in making the transfer, and to prove that it was for the purpose of enabling the assignor to become a witness, and thus remove the bar raised by the statute of limitations. An assignment made under such circumstances, cannot be regarded as, *bona fide*, within the meaning of the act of Assembly. And when it is considered, that the testimony was offered, not by a party to the instrument, but by a stranger, and one who was injuriously affected by the assignment, and upon the ground that it was founded in fraud, we can perceive no reason for rejecting it.

The rule indeed, which has been relied on, as forbidding the introduction of parol evidence to contradict or vary the terms of the written assignment, has no application to this case. It is confined to the parties to the instrument, and their representatives, or those claiming under them; and does not extend to a third person, in the situation of the defendant. 1 *Wheat. R.*, 314. 1 *Greenl. Ev.*, 317.

It is true, as stated by the counsel for the appellee, that the court will not permit the assignor to defeat, or disparage, the title of his assignee, by acts or admissions, subsequent to the assignment. The assignee, even in cases where he is obliged to sue in the name of the assignor, is regarded as the real plaintiff. He is protected against "such acts and admissions of the assignor, as would operate in fraud of his rights." Therefore, if the defendant should procure a release from the assignor, or obtain a sett-off against him, after notice of the assignment, or possess himself of any other defence, through his instrumentality, it would be inoperative; and the court

would preclude the defendant from availing himself of such defence, "whether asserted in the form of a plea, or as evidence under the general issue." *Owings and Piet vs. Low*, 5 G. & J., 145. *Frear vs. Evertson*, 2 J., 142. 5 *Wheat.*, 277.

But this doctrine has no application to the question under consideration. The evidence was not offered to impeach the assignment, or to impair the rights of the assignee, by any thing that occurred subsequent to the transfer. It was proposed, as we have seen, to prove, that at the time the assignment was made, the assignor was influenced by considerations, which would invalidate the instrument itself, upon the true construction of the act of Assembly.

We are therefore of opinion, that the question proposed by the defendant was proper, and that the court erred in not permitting it to be propounded to the witness.

By the act of Assembly of 1829, ch. 51, to which we have already adverted, it is provided, " that any assignee *bona fide* entitled to any judgment, bond, speciality, or other chose in action, for the payment of money, assigned in writing, may, by *virtue of such assignment, maintain an action in his own name;"* and the question presented for our consideration by the third exception, is, whether an open account of this description, *is assignable, so as to authorise the assignee to sue in his own name*, according to the true interpretation of that act?

It must be conceded, that an account for the rendition of medical services, and for the sale of medicine, is a chose in action for the payment of money; for, on proof that the services were rendered, and the medicine furnished, as charged, the law raises a promise to pay for them in money. As, therefore, an account of this kind is obviously within the words, it must be regarded as within the contemplation of the act, unless the legislature intended to discriminate between express and implied contracts. But no such distinction is to be found in the statute. The language is sufficiently comprehensive to embrace all choses in action, with the single qualification, that they must be for the payment of money; and the difference between an express and implied contract, is not in the cha-

racter of the undertaking, but only in the mode of proof.
2 *Greenl. Ev.* 78.

We think, therefore, that this account is embraced by the
act of Assembly. Prior to that act, the assignee of a chose in
action, unless it was negotiable by the mercantile law, was
obliged to sue in the name of the assignor, or if he was dead, in
that of his personal representative. To obviate this inconve-
nience, often injurious to the assignee, the act of Assembly was
passed; and is to be liberally construed, as a remedial and
beneficial statute.

The elementary writers upon the subjects of contracts, divide
them into two classes: those, in which the parties stipulate to
perform, or to omit to do, some act or duty, and those which
are for the payment of money. The former class of contracts
is clearly not within the provisions of this act of Assembly; for,
though the law gives to the party a remedy in the form of
damages for the injury he sustains by a violation of the con-
tract, it is not a chose in action for the payment of money.

In the case of *Gordon against Downey*, 1 *G. R.*, 41, the
chose in action was a written agreement, by which the defend-
ant stipulated for the payment of a rent, in money, to the
lessor of the demised premises, and also to give to a third per-
son mentioned in the instrument, a portion of the produce
raised upon the land, and to furnish the means of removing it.

It is apparent, therefore, from an inspection of the agree-
ment, that it was not a chose in action, purely for the payment
of money, but contained other stipulations; and upon this
ground, the court held that it was not such a chose in action as
was contemplated by the act of Assembly. They say:—"It
was not the intention of the legislature to confer on the assignee
any such power, except in cases where the chose in action was
purely for the payment of money; and where the only action
which, from the nature and stipulations of the chose in action
assigned, the assignor could have maintained, if no assign-
ment had been made, was that for the payment of money due
on the contract." This is the character of the chose in action
before us. It is evident, that the only action which the assignee
could have maintained on this account, if no assignment had

been made, was an action for the payment of money, due on the implied contract.

It follows from the views thus expressed, that we think, the court below committed no error by rejecting the defendant's prayer, as presented in this exception. The plaintiff was entitled to maintain the action in his own name, by virtue of the assignment, and it was unnecessary either to aver in the declaration, or prove, a promise by the defendants to pay the account.

We think the court below decided correctly in overruling the motion made by the defendant to arrest the judgment. That it was not necessary for the plaintiff to aver in his declaration, that he was *bona fide* entitled to the account, or that it was *bona fide* assigned, is determined in the case of *The Bank of the United States vs. Lyles*, 10 *G. & J.*, 326. The objection would have been bad on *demurrer*.

We concur therefore with the county court, in the opinion expressed by them in the *first* and *third* exceptions, and in overruling the motion in arrest of judgment. But as we dissent from the opinion expressed by the court in the *second* exception, we shall reverse the judgment, with costs to the appellant, and order a procedendo.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.