ROBERT GORDON *vs.* JAMES M. DOWNEY.—*June* 1843.

By the act of 1829, ch. 51, any assignee, *bona fide* entitled to any judgment, bond, specialty or *other chose in action for the payment of money*, by assignment in writing, signed by the person authorized to make the same, may by virtue of such assignment sue and maintain an action, &c., in his name, &c., against, &c. HELD: that an instrument of writing which bound the defendant to pay a money rent, let a third party have a portion of the produce of the demised premises, and furnish the means of carrying it away, was not such an instrument, as under that act, would authorise an assignee to maintain an action in his own name.

The chose in action contemplated by the act of 1829, ch. 51, was one purely for the payment of money; and where the assignor if no assignment had been made, could only maintain an action for non-payment of the money.

But where money is due under such a contract, and the defendant promises the assignee to pay the same, this will enable the assignee to sue independent of the act of 1829, ch. 51, upon the express promise.

Where a verdict is rendered for the plaintiff on two counts in a declaration, one of which contains no cause of action, the court will render judgment upon the other if legally sufficient.

The act of 1809, ch. 164, declares that judgment shall not be stayed after verdict for defect of any count in a declaration, where there is one good count.

Where the plaintiff counts upon a contract assigned to him, followed by an express promise by the defendant to pay him the sum alleged to be due under it, and the bill of exceptions does not show that the plaintiff had closed the testimony on his part, it is error in the court, upon the motion of the defendant, to reject the proof of the assigned contract.

In virtue of the act of 1831, ch. 319, this court is required in appeals from certain county courts enumerated in that act, to decide upon all the bills of exception taken at the trial below, whether appealed from or not.

Where the county court awards a new trial, it has power to authorize an amendment of the pleadings under the act of 1785, ch. 80, sec. 4.

Where a verdict is set aside and a new trial awarded, the case, as far as amendments are concerned, stands as if no trial had been had.

An application for an amendment of pleadings is not a demand of a matter of right, but is an appeal to the sound discretion of the court, and to be granted when it shall appear necessary to bring the merits of the question between the parties fairly to trial.

Where an application is made to the court to withdraw a general issue plea, and file a general demurrer, and the defendant's exception to a refusal to grant that privilege did not state the existence of any necessity for such amendment, and it did not appear that the amendment if made would have given the defendant any new defence, it is not error in the county court to refuse the amendment.

Gordon *vs.* Downey.—1843.

Will an appeal lie from the decision of the county court exercising its discretion, in allowing or refusing an amendment of the pleadings? Qr.

Where the county court, after verdict for the plaintiff, upon motion arrested the judgment, and there was no error in the bills of exceptions taken by the defendant, this court overruling the motion in arrest, will proceed to enter final judgment upon the verdict for the plaintiff.

APPEAL from *Washington* County Court.

This was an action of *trespass upon the case*, brought on the 11th November 1839, by the appellant against the appellee. The plaintiff below declared as follows, viz :

*1st Count.* That whereas, heretofore, to wit, on, &c., a certain *James Downey, senior,* entered into an agreement in writing with the said defendant, to wit, &c., whereby the said *James Downey, senior,* agreed to rent to the said defendant the farm whereon they both then resided, for one year, from the 1st day of April 1837, to the 1st day of April 1838, for the sum of three hundred dollars per year, from which sum one hundred dollars shall be deducted for paying taxes, making necessary repairs, and boarding the said *James Downey, senior,* and that the said defendant should let *Martha Gordon* have all the apples which might grow on the old trees in the orchard west of the house, which fruit the said *Martha Gordon* should remove on or before the 15th day of October in each year, so that the said defendant might pasture the ground; and they further agreed, that the said defendant should let the said *Martha Gordon* have the second crop of grass of that portion of the meadow which she had usually got, and which she shall cut when he gives her notice that he is cutting his own, and if cut at that time, the said defendant agreed and obligated himself to find horses, wagon and one hand to haul said hay; and they further agreed, that the said *James Downey, senior,* should allow sufficient timber to be cut for rails, repairs and firewood, for the use of the house, and no more, without the consent of him the said *James Downey, senior;* and afterwards the said *James Downey, senior,* and the said defendant agreed in writing, that the said agreement should be renewed for another year, to end on the 1st day of April, in the year of

our Lord 1839, to wit, at, &c. And the said plaintiff in fact saith, that the said defendant in pursuance of the said agreement did occupy the said farm from the said 1st day of April 1837, to the 1st day of April 1839, by reason whereof, and by virtue of the said agreement in writing, the said defendant became indebted to the said *James Downey, senior,* in the sum of four hundred dollars, that is to say, the sum of two hundred dollars for the year ending on the 1st day of April 1838, and the further sum of two hundred dollars for the year ending on the 1st day of April in the year next following, to wit, 1839; and whereas the said *James Downey, senior,* before any part of the said sum of money due for the first said year, had been paid by the said defendant, and before the said sum of two hundred dollars for the second year had become due, and before any part thereof had been paid by the said defendant, to wit, on the 27th day of October 1838, to wit, at the county aforesaid, assigned the said written agreement to one *Martha Gordon,* by an assignment in writing, on the said agreement signed by him, the said *James Downey, senior,* which assignment was and is in substance and effect as follows, that is to say, whereas I am now boarding with my daughter, *Martha Gordon,* I do hereby assign unto the said *Martha Gordon,* all my right, title, claim and interest, in and to the within, and all money due thereon, or that may hereafter become due, as compensation for my boarding and the trouble she may have in attending to and taking care of me. Witness my hand, October 27th, A. D. 1838; and the said *James Downey, senior,* thereunto subscribed his name, and then and there delivered the said agreement, in writing, with the assignment thereon, to the said *Martha Gordon,* to wit, &c.; of which said assignment the said defendant then and there had notice; and whereas, the said *Martha Gordon* afterwards, and before any part of the said sum of two hundred dollars, due for the first of the said year's rent, had been paid by the said defendant, and before the said sum of two hundred dollars, to be paid for the second year's rent, had become due, and before any part thereof had been paid by the said defendant, to wit, on the 29th day of

March 1839, to wit, at, &c., assigned the said agreement, in writing, to the said plaintiff, by an assignment in writing, on the said agreement, signed by her the said *Martha Gordon,* which said assignment is in substance and effect as follows, that is to say, I hereby assign and set over all my right, title, interest, claim, property and demand, to the within article of agreement, unto *Robert Gordon,* at my risk, for value received. Witness my hand and seal, this 29th day of March 1839, and and thereunto signed her name, and affixed her seal, to wit, at, &c., and then and there delivered the said agreement, with the said several assignments thereon, to the said plaintiff, of which said assignment the said defendant then and there had notice. By virtue of which said several assignments, and by virtue of the Act of Assembly in such case made and provided, the said defendant became indebted to the said plaintiff in the said sum of four hundred dollars, in pursuance of the terms of the said agreement, and the said plaintiff became entitled to have and demand the same, that is to say, $200 for the year ending the 1st day of April 1838, and the further sum of $200 for the year ending on the 1st day of April then next following; *and the said defendant being so indebted to the plaintiff,* afterwards, to wit, &c., *in consideration thereof, undertook and then and there faithfully promised the said plaintiff the said sum of four hundred dollars, according to the terms of said agreement, whenever he should be thereunto requested.*

*2nd Count.* And whereas, afterwards, to wit, on, &c., at, &c., the said defendant was indebted unto a certain *James Downey, senior,* in another sum of $400, for the use and occupation of a certain messuage, tenement, farm and land, with the appurtenances, of the said *James Downey, senior,* by the said defendant, and at his special instance and request, and by the sufferance and permission of the said *James Downey, senior,* for a long time before then elapsed, had held, used, occupied and enjoyed, which said debt of $400 was evidenced by the written promise of the said defendant, signed by the said defendant, to pay the said sum of money to the said *James Downey, senior,* when the same became due, to wit, on, &c., at,

&c.; and whereas, afterwards, to wit, on, &c., &c., the said *James Downey, senior,* assigned, by an assignment in writing, signed by him the said *James Downey, senior,* the said written promise of the said defendant, and the said debt thereby evidenced to one *Martha Gordon,* for value received, of which said assignment the defendant then and there had notice; and whereas, afterwards, to wit, on, &c., at, &c., the said *Martha Gordon* assigned, by an assignment in writing, signed by her the said *Martha Gordon,* the said written promise of the said defendant, and the said debt or sum of four hundred dollars, thereby evidenced to the said plaintiff, then and there delivered the said written promise, with the said several assignments thereon to the said plaintiff: By reason whereof, and by virtue of the Act of Assembly in such case made and provided, the said defendant became indebted to the said plaintiff, in the said sum of four hundred dollars, as evidenced by the said written promise, *and being so indebted, he the said defendant then and there undertook and faithfully promised the said plaintiff, to pay him the said sum of four hundred dollars, whenever he should be thereunto afterwards requested.*

*3rd Count.* And whereas, also, afterwards, to wit, on, &c., at, &c., by a certain agreement, then and there made, between the said defendant and a certain *James Downey, senior,* it was agreed, that for the consideration in said agreement thereinafter mentioned, the said *James Downey, senior,* did rent to the said defendant the farm whereon they the said *James Downey, senior,* and the said defendant then resided, the same being the farm of the said *James Downey, senior,* from the 1st day of April 1837, for one year thence next ensuing, for the sum of three hundred dollars for said year, from which sum, one hundred dollars was to be deducted for paying taxes, making necessary repairs, and boarding the said *James Downey, senior,* the said defendant to let *Martha Gordon* have all the apples on the old trees in the orchard west of the house, which fruit the said *Martha Gordon* was to remove on or before the fifteenth day of October, in the year aforesaid, so that the said defendant could pasture the ground; the said defendant to let the said

*Martha* have the second crop of grass of that portion of meadow which she usually got, which she was to cut at that time; the said defendant obligated himself to find horses, wagon and one hand to haul said hay; the said *James Downey, senior,* to allow sufficient timber for rails, repairs and firewood, for the use of the house, and no more, without his consent. And the said plaintiff in fact saith, that after the making of the said promise and agreement on the part of said defendant, he the said defendant used, possessed, occupied and enjoyed the said farm, in pursuance of said agreement, for the said term of one year from the said 1st day of April 1837, to the 1st day of April 1838, whereby he became liable to pay to the said *James Downey, senior,* by virtue of his said promise and assumption, the said sum of two hundred dollars, current money, for the said occupation, possession and use of said farm, and being so liable, he the said defendant, afterwards, to wit, on the day and year aforesaid, at the county aforesaid, promised to pay the same whenever he should be requested. And the said plaintiff further in fact saith, that afterwards, and before the expiration of the said lease for one year as aforesaid, to wit, at, &c., the said *James Downey, senior,* and the said defendant, agreed in writing, that the said agreement herein before set forth, should be renewed and continued for one year more, to end on the 1st day of April 1839; and the said plaintiff further saith, that in pursuance of said agreement, so renewed and continued as aforesaid, the said defendant continued to possess, occupy and enjoy the said farm, for the term of one more year, ending on the 1st day of April 1839, whereby he became liable to pay to the said *James Downey, senior,* the said further sum of two hundred dollars, for the said use, enjoyment and possession of said farm, from the said 1st day of April 1838, to the 1st day of April 1839, according to his promise and assumption aforesaid, to wit, at the county aforesaid, and being so liable, he the said defendant then and there undertook and faithfully promised to pay the same accordingly. And the said plaintiff further saith, that before any part of the said sum of money, due for the first year as aforesaid, had been paid by the said de-

fendant, and before the said sum of two hundred dollars for the second year aforesaid, had become due, and before any part thereof had been paid by the said defendant, to wit, on the 27th day of October 1838, at the county aforesaid, the said *James Downey, senior,* for a full and valuable consideration, paid to him by *Martha Gordon,* by his assignment in writing, his name being thereto signed, did assign and transfer the said written agreement to the said *Martha Gordon,* and all his right, title and interest therein and to the said money, due and to become due thereon, from the said defendant to him the said *James Downey, senior,* and then and there delivered the said agreement in writing, with his said assignment thereon, to the said *Martha,* to wit, at the county aforesaid; of which said assignment the said defendant then and there had notice. And the said plaintiff further saith, that the said *Martha,* afterwards, and before any part of the said sum of four hundred dollars, due as aforesaid, had been paid by the said defendant, to wit, on the 29th day of March 1839, at the county aforesaid, did assign and transfer in writing to the said plaintiff, by an assignment in writing, under the seal of said *Martha,* on the said agreement signed by the said *Martha,* all her the said *Martha's* said interest, right, title, claim, property and demand to the said article of agreement, and the rent due on the same as aforesaid, and then and there delivered the said agreement, with the said assignments thereon written, to the said plaintiff, of which last said assignment the said defendant then and there had notice. *By virtue of which said several assignments, and by virtue of the Act of Assembly in such case made and provided, the said defendant became indebted to the said plaintiff in the said sum of four hundred dollars, in pursuance and in virtue of the said promises and agreements, and the terms thereof, and the said plaintiff became entitled to have and demand the same; yet, &c.*

The defendant pleaded that he did not undertake and promise in manner and form as the said *Robert Gordon* hath above thereof complained against him, and of this he puts himself upon the country, &c.

At the trial of this issue the jury found a verdict for the plaintiff for $459.80 damages, which the court set aside, and awarded a new venire. At the second trial the jury again found for the plaintiff on the first and third counts of the nar, damages $382.

The defendant moved the court to arrest the judgment, and assigned the following reasons:

1. That the instrument described and set out in the *first* and *third* counts of the plaintiffs declaration, being an agreement containing various stipulations on both sides, besides the undertaking for the payment of money, is not an instrument upon which the assignee can bring suit in his own name, within the meaning of the Act of Assembly in such case made and provided.

2. That there is not in the case set out in either the *first* or *third* count of the declaration, any written contract for the reservation of rent for the period, for the rent of which this suit is brought, that is to say, from the 1st of April 1837, to the 1st. of April 1839.

3. That if there be such a written contract, there is in point of fact no assignment of it, as in the case of the plaintiff is set forth in either of said counts.

4. That the said *first* and *third* counts are in other respects erroneous, defective and insufficient.

The county court *being divided* in their opinion on the motion of the aforesaid *James M. Downey*, by his attorney aforesaid, for an arrest of judgment on the *first* reason assigned, the same was accordingly arrested.

The county court being unanimous in their opinion as to the remaining reasons, the same *were overruled* by the court here.

1st EXCEPTION. At the trial of this cause, the defendant prayed the court for leave to withdraw his plea and to file a general demurrer to the *first* and *third* counts of the declaration, but the court, (BUCHANAN, C. J., and T. BUCHANAN, A. J.) inasmuch as there had been a new trial at the instance of the defendant, refused permission to amend; and decided that the defendant should proceed to trial upon the issue as it

stood when the new trial was granted. The defendant excepted.

2ND EXCEPTION. The plaintiff to support the issue on his part joined in this case, offered in evidence the following agreement, to wit:

This indenture made this 8th of January 1836, between *James Downey, senior,* and *James M. Downey,* both of *Washington* township, *Franklin county* and *State of Pennsylvania,* witnesseth, that for the consideration hereinafter mentioned, the said *James Downey, senior,* doth rent to the said *James M. Downey,* the farm whereon they now reside, from the 1st of April 1835, for the term of two years, for the sum of three hundred dollars per year, from which sum one hundred dollars shall be deducted for paying taxes, making necessary repairs and boarding said *James Downey, senior.* The said *James M. Downey* shall let *Martha Gordon* have all the apples that grow on the old trees in the orchard west of the house, which fruit the said *Martha Gordon* shall remove on or before the 15th of October in each year, so that the said *James M. Downey* can pasture the ground. The said *James M. Downey* shall let the said *Martha Gordon* have the second crop of grass of that portion of the meadow that she usually gets, which she shall cut when he gives her notice that he is cutting his own, and if cut at that time said *James M. Downey* doth obligate himself to find horses, wagon and one hand to haul said hay. Witness our hands and seals the day and year above mentioned.       JAMES DOWNEY, SEN'R, (SEAL.)
                      JAMES M. DOWNEY,      (SEAL.)

A supplement to the above articles and they renewed for another year, the said *James Downey, senior,* doth allow sufficient timber for rails, repairs and firewood for the use of the house and no more, without his consent, made and agreed to this 13th day of January, 1837.

JAMES DOWNEY, SEN'R.
JAMES M. DOWNEY.

The above articles renewed for another term, to end on the 1st of April 1839.       JAMES DOWNEY, SEN'R.
                      JAMES M. DOWNEY.

On the back of the foregoing agreement are the following endorsements, to wit: Received the rent in full for the year, from the 1st of April 1835, to the 1st of April 1836. Witness my hand this 8th day of August, 1836.

JAMES DOWNEY, SR.

Received satisfaction in full for the rent of the year from the 1st April 1836, to the 1st April 1837. Witness my hand this 17th day April, 1838.          JAMES DOWNEY, SEN'R.

Whereas I am now boarding with my daughter, *Martha Gordon*, I do hereby assign unto the said *Martha Gordon* all my right, title, claim and interest in and to the within article of agreement, and all money due thereon or that may hereafter become due as compensation for my boarding, and the trouble she may have in attending to and taking care of me. Witness my hand October 27th A. D. 1838.

JAMES DOWNEY, SEN'R.

Witness,—*John Flanagan, James Mayhigh.*

I hereby assign and set over all my right, title, claim, interest, property and demand, to the article of agreement, unto *Robert Gordon*, at my risk, for value received. Witness my hand and seal this 29th day of March, 1839.

MARTHA GORDON, (L. S.).

The plaintiff also offered in evidence the several receipts endorsed upon the same for the payment of the rent due on said agreement up to the 1st day of April, 1837, which were admitted by the defendant. The plaintiff further offered in evidence the supplement to and renewal for another year of the said agreement, endorsed upon the same, and signed by the said *James Downey, senior,* and the defendant, dated 13th January 1837, and also the other renewal endorsed thereupon, without date, whereby the said agreement was renewed for another term to end upon the 1st April 1839, and signed by said parties in like manner, the execution of both which renewals was admitted. The plaintiff also offered in evidence the assignment of said agreement from the said *James Downey, senior,* to *Martha Gordon,* endorsed thereupon and dated 27th October 1838, and also the assignment thereof from the said *Martha Gordon* to the plaintiff, endorsed upon the said

agreement and dated 29th day of March, 1839, the due exe-
cution of both which assignments was admitted. The plaintiff
further offered by competent testimony, that the defendant
occupied and enjoyed the property mentioned in said agree-
ment from the 1st day of April, 1835, to the 1st day of April,
1839. Whereupon the defendant by his counsel prayed the
court to instruct the jury, that the said agreement being a
contract *inter partes* in which various things are stipulated to
be done and performed on both sides, and not a mere chose
in action for the payment only of money, the same was not an
instrument on which the assignee could bring suit in his own
name, and therefore the said agreement was not admissible
evidence under the *second* count in the plaintiff's declaration;
and the court (BUCHANAN, C. J., and T. BUCHANAN, A. J.)
being divided in opinion on the subject matter of said prayer,
the plaintiff was not permitted to read said agreement in evi-
dence under the said *second* count. The plaintiff excepted.

The judgment being arrested on the verdict, the plaintiff
below appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY
and CHAMBERS, J.

By J. DIXON ROMAM for the appellant, and
By R. JOHNSON for the appellee.

DORSEY, J., delivered the opinion of this court.

We think the county court erred in arresting the judgment
on the verdict rendered in this case, notwithstanding, it is our
opinion, that the *chose in action*, assigned in this case, is not
such a *chose in action* as would, under the act of 1829, ch. 51,
entitle the assignee, standing upon the assignment only, to the
maintenance of an action in his own name. It was not the
intention of the legislature to confer on the assignee any such
power, except in cases where the chose in action was purely
"for the payment of money," and where the only action which,
from the nature and stipulations of the *chose in action* assigned,
the assignor could have maintained, if no assignment had been

made, was that for the payment of the money due on the contract. It never was intended that the assignor should transfer to the assignee a complete right of action, to be prosecuted in his own name, and at the same time retain in himself, under the same chose in action, a power to sue for the breach of stipulations, not for the payment of money. But in the *first* count in the declaration filed in this case, there is an allegation that the defendant, after the assignment, and after the money became due, promised to pay it to the plaintiff, which promise would authorise him to sue for it, as he has done, whether the assignment be legal or equitable, and whether the act of 1829 had ever passed or not. The verdict, it is true, was rendered by the jury on the first and third counts in the plaintiff's declaration; the latter of which contains no such promise to pay. But by the second section of the act of 1809, ch. 164, it is enacted, "that where any verdict shall be given in any action, suit or demand, in any court of record of this State, the judgment thereupon shall not be stayed or reversed for any defect of form or substance in any writ, original or judicial, or for any variance in such writ from the declarations or other proceedings, nor for defects in any count in the declaration, so that there be one good count."

The county court erred in withdrawing from the jury, under the *second* count in the declaration, the agreement between *James M. Downey* and *James Downey, senior*, that count having charged a promise of payment by the defendant to the plaintiff, as having been made after the assignments in evidence before the jury. And for aught that appears to us, but for such withdrawment, the promise, as laid, might have been proved. The bill of exceptions does not state or show that the plaintiff had closed the testimony on his part.

In virtue of the act of 1831, ch. 319, this court are required in appeals from all the counties therein enumerated, (of which *Washington* county is one,) to decide upon all the bills of exceptions, taken at the trials below, whether appealed from or not. It becomes our duty, therefore, to inquire whether the county court were right in refusing the application of the

defendant, to withdraw the general issue and put in a general demurrer to the plaintiff's declaration.

On behalf of the appellant it has been insisted, that on awarding a new trial, no amendment of the pleadings can be allowed, at the instance of the party on whose application the new trial was granted, no matter with what urgency the appeals of justice might demand it. For this broad proposition no authority has been cited; and we do not think it consistent with the 4th section of the act of 1785, ch. 80, which declares, "that the courts of law shall have full power and authority to order and allow amendments to be made in all proceedings whatsoever, before verdict, so as to bring the merits of the question between the parties fairly to trial; and if amendment is made after the jury is sworn, a juror shall be withdrawn." When the verdict is set aside, and a new trial awarded, the case, as far as amendments are concerned, stands as if no trial had ever been had. But an application for an amendment of pleadings, is not a demand of a matter of right, but is an appeal to the sound judicial discretion of the court, and to be granted when it shall appear necessary to bring the merits of the question, between the parties, fairly to trial. In this case there was nothing to shew the existence of such necessity, or that the amendment if made, would have given the defendant any defence to the action, to which he would not have been entitled in the condition in which the pleadings then stood. Conceding, then, the affirmative of the proposition, (on which we mean to express no opinion,) whether an appeal will lie, from the decision of a court exercising its discretion in allowing or refusing an amendment of the pleadings, we think the refusal to permit the defendant to make the amendment asked for, was no ground for a bill of exceptions or an appeal, the defendant having sustained no injury from the decision of the county court, of which he complains.

Dissenting from the course pursued by the county court, as stated in the bills of exceptions of both appellant and appellee, and also dissenting from its decision on the motion in arrest, we reverse its judgment.

JUDGMENT ON THE VERDICT AND AWARD.