DANIEL B. BANKS *vs.* ELIZA A. MCCLELLAN.

USURY : JURISDICTION IN EQUITY.—Whore property is mortgaged to secure a debt affected with usury, the assignee of the equity of redemption is entitled to the aid of a Court of Equity to redeem the property by paying the mortgage debt and simple interest thereon, or by bringing the same into Court to be paid, if 'a proffer to that effect is contained in the bill.

Where property subject to a mortgage, is sold clear of the mortgage, and certain certificates of stock, part of the purchase money, are deposited with a third party to await the determination of the amount due upon the mortgage, (the mortgagor claiming that the mortgage was in part usurious and should be reduced in amount,) and afterwards the vendor assigned his interest in the certificates, the assignee agreeing to pay the amount actually due on the mortgage so as to release the stock, HELD :

That the assignee may maintain a bill in equity against the mortgagee, to have the question of usury and the true amount of the mortgage debt determined.

ASSIGNMENT OF CHOSES IN ACTION.—The assignment also carried the rights of the assignor in and to certain real estate which he had conveyed absolutely to said mortgagee, but which conveyance by private understanding between him and said mortgagee was to be treated as a mortgage, and the latter in fraud of said agreement had sold the property to a third person, and the assignee of the stock sought to have this fraudulent sale accounted for so as to further reduce the amount due upon the stock, HELD :

1st.   That these matters of the assignment are not to be regarded as unmixed choses in action for the payment of money within the meaning of the act of 1829, ch. 51.

2nd.   That as assignee of the mortgagor's rights in reference to the real estate, if the transaction in relation to it between the assignor and the defendant was intended merely as a security for a loan, the complainant can resort to a Court of Equity for a decree declaring the conveyance a mortgage, and directing the reconveyance of the property upon payment of the amount properly due; or if the property has passed beyond her reach, and the mortgagee be overpaid, for a decree ordering an account and repayment of the difference.

USURY : COMPOUND INTEREST.—Money due for interest may, by agreement, be changed into principal to bear interest *in futuro*, but not otherwise.

An agreement by the mortgagor to pay the taxes on the mortgage debt, is not usurious.

An assignee standing in legal privity with the mortgagor may avoid the contract for the excess of usury, and is entitled to the proper reduction on the mortgage debt.

EVIDENCE : COMPETENCY OF WITNESS.—A mortgagor who has assigned all his interest in the mortgaged property without recourse, may in a suit brought by the assignee be a witness to prove that the mortgage debt was affected with usury.

APPEAL from the Superior Court of Baltimore city sitting in equity.

The bill of complaint of Eliza A. McClellan, (the appellee,) filed the 1st of July, 1859, sets forth as follows :   In May, 1841, William McClellan applied to Daniel B. Banks, the appellant, for a loan of $1,500, to which Banks would assent only upon the terms that it should be taken in fifteen shares of Gas Company stock, the par value of which was $100 a share, but which was then worth in the market only $90 a share, or $1,350, less broker's commissions.   As security for the loan the said McClellan offered to mortgage a ground rent of $100 a year, issuing out of a lot on Bank lane, in Baltimore.   This was accepted by Banks, and McClellan on his part consented to take the gas stock in lieu of money.   A mortgage prepared in accordance with the agreement was executed and acknowledged by W. W. McClellan and wife, on the 18th day of May, 1841, before T. Hanson Belt and William P. Stewart, Justices of the Peace, and tendered to Banks, but he declined to accept it, and required instead a deed absolute in form.   Under this requirement and the restraint imposed by pecuniary necessity, the said McClellan and his wife executed and delivered to Banks an absolute conveyance of the rent and reversion, under the understanding that it should have the same effect as a mortgage—Banks agreeing to reconvey the property after the expiration of three years, and meanwhile receiving, as interest upon said loan, the said yearly rent of $100. At the end of three years, McClellan, applying to Banks to ascertain if he required payment of the debt, was informed by the latter that the loan might continue, the said Banks still receiving the annual rent as interest, and holding himself ready to reconvey at any time, upon receiving payment of the principal.   Had Banks required payment then or at any other time, McClellan would not have had the slightest difficulty in selling the rent at the rate of six

per cent., as it was on a permanent lease and well secured. But Banks assured McClellan that the said arrangement should last until it might be convenient for McClellan to pay the debt, unless Banks himself should sooner think fit to require payment. But, in disregard of his obligation, the appellant, after receiving the said rent regularly as it became due, as for interest, on the 25th of May, 1860, sold and conveyed the said rent and reversion to John Gibson, for the sum of $1,700. The sale was made without any notice whatever to McClellan, who did not obtain knowledge of it till long afterwards—nor then by any communication from Banks. The appellant never accounted with McClellan for the proceeds of the sale, or for the rent, although requested by him to do so and to pay him the excess of moneys received over and above the true amount of the loan ; in other words, over the sum the gas stock sold for, viz : $1,350.

The bill further states that to secure payment of a note of Wm. W. McClellan, endorsed by Catharine M. McClellan, for $1,060, (sixty dollars of the amount representing one year's interest, and the note as to the remaining one thousand dollars being in fact given for only two-thirds of that sum lent by said Banks to said Catharine,) Catharine M. McClellan mortgaged to said Banks, on or about the 23d of July, 1844, a certain lot on Baltimore street, near Green street, particularly described in the mortgage ; that on the 3d of June, 1845, the said Catharine M. McClellan conveyed the said last mentioned lot to William W. McClellan ; that a contract was entered into between McClellan and one Purcell, for a lease to the latter of part of said mortgaged ground at a stipulated rent ; and in order to carry it into effect McClellan and his wife, on the 18th of April, 1850, conveyed the same part to Banks, (who, as above stated, had a mortgage upon the whole,) and Banks then executed a lease to Purcell, reserving the rent agreed upon.

The understanding upon which these last mentioned conveyances were made is shown in the following agreement, under the hand and seal of the appellant:

Upon the payment to the undersigned, at any time within six months from the date hereof, of the debt or sum of one thousand dollars mentioned, to be secured by an indenture of mortgage from Catharine McClellan to Daniel B. Banks, bearing date the 23d of July, 1844, and recorded among the Land Records of Baltimore County, in Liber T. K., No. 344, folio 462, &c., with interest on said sum of $1,000 from the 8th day of January, 1850, I hereby bind and oblige myself and my representatives to reconvey to William W. McClellan, or to his representatives, the lot of ground conveyed to me by said McClellan and Maria, his wife, by indenture dated the 18th day of April, 1850, and intended to be recorded among the Land Records of Baltimore City, subject to the lease this day executed by me and my wife to John T. Purcell; and I also bind and oblige myself to release the balance of the property mentioned in the mortgage above referred to from the operation of said mortgage.

The bill further shows, that the said Wm. W. McClellan being in need of the sum of $1,625 to complete the payment of the purchase money of a piece of ground on the east side of Charles street, which had been sold to him, under a decree of the Court of Chancery, by Grafton L. Dulany, trustee, applied to the appellant for the loan of said amount, offering a mortgage of the same property as security; that Banks, however, preferred that his security should take the form of an absolute conveyance of the property, and exacted interest at the rate of twelve per cent. per annum; and these terms McClellan was compelled to submit to, to prevent a resale of the property by the trustee for default of payment of the unpaid residue of purchase money, and the said ground was accordingly conveyed in form absolutely to the appellant; that he agreed with McClellan that on re-

5      v. 24.

payment of the said loan of $1,625 within one year there-
after, with interest at the aforesaid rate, he would convey
over the said ground to said McClellan; that within four
months, however, McClellan offered to pay the said sum
of $1,625, with the said usurious interest; but Banks, in
fraud of his agreement and of the trust on which the prop-
erty was conveyed to him, refused to receive the said debt
and interest, or to convey and release said ground, untruly
asserting that the said property was his own absolutely,—
free of all trust or obligation, on his part, to convey the
same, in any event, to the said McClellan; that said Banks
was aware that the said piece of ground was indispensable
to McClellan as a constituent part of a large property,
which he was about to charge with a permanent rent for
the purpose of raising a sum of money which was then very
important to him; and so knowing, Banks availed himself
of the circumstances pressing upon McClellan, to dictate to
the latter the harsh and grinding terms on compliance with
which he was willing to fulfill his equitable obligation to
convey said ground; that he insisted, as the condition on
which he would perform his agreement, that McClellan
should give him a mortgage of two adjoining parcels, situ-
ated on the east side of Charles street, to secure payment of
an usuriously made up sum and falsely presented debt of
$1,288.60, the composition of which will be presently
explained; that under such duress, McClellan yielded to
this grievous exaction, and executed to the appellant the de-
manded mortgage, paid the appellant his said debt of $1,625,
and received a conveyance of the property mentioned in the
said deed from Mr. Dulany, trustee; that the interest on
this $1,625, calculated by Banks at the rate of twelve per
cent. per annum, was included in said sum of $1,288.60.

The bill further shows that, for a valuable consideration,
Wm. W. McClellan assigned and conveyed all his claims
above mentioned, and the rent and reversion of the ground

leased to Purcell, and the residue of the ground mentioned in the said mortgage of the 23d of July, 1844, unto the complainant, Eliza A. McClellan. (See deed from William W. McClellan to Eliza A. McClellan, dated 25th June, 1859.)

And the complainant, in fulfillment of the obligations assumed in taking said assignment and conveyance, states her readiness, and by her bill offers, to pay the appellant or to bring into Court, the said $1,000, with interest thereon from the said 8th day of January, 1850, together with the said sum of $39.27, with interest thereon from the 6th day of May, 1850, and such other sums as the Court may adjudge.

The bill further states that Wm. W. McClellan before his said assignment to the complainant, and the complainant subsequently thereto, had in vain applied to the said Daniel B. Banks to account as aforesaid, accept payment of the moneys due him, and execute the said equitable releases and conveyances.

The bill prays that on payment by the complainant, or bringing into Court for due payment, the said sum of one thousand dollars and interest as aforesaid, and said sum of thirty-nine dollars and twenty-seven cents and interest as aforesaid, and any further sums that the Court may adjudge to be equitably due, the said Banks may be decreed to convey to the complainant and her heirs the said rent and reversion of said ground leased to Purcell, and the other ground embraced in the said mortgage from Catharine M. McClellan, and that the said mortgage of the 6th of May, 1850, may on the payments aforesaid being made, or the said sums brought into Court, be decreed to be released by said Banks, and be adjudged to be satisfied, released and made of no effect, with the prayer for general relief.

The defendant, now appellant, was summoned, and an interlocutory decree having been duly signed, a commission

issued under which the several exhibits were proved and evidence taken.

On the 18th of January, 1842, it was agreed between the parties, that the interlocutory decree should be stricken out, and that the defendant might file his answer, upon the terms, that all those parts of said answer which rely on the bar or objection of limitations, or lapse of time, or staleness of claim, or laches of any party or person, should be considered as struck out, and that such objection should not be relied on, under any view or pretensions, at the hearing. All the testimony taken on the part of the complainant to stand as if the agreement had not been made, nor the interlocutory decree struck out, with leave to the defendant to cross-examine.

The appellant's answer denies that he ever had any dealing with William W. McClellan respecting the Bank lane ground rent, and insists that he purchased the same, giving the gas stock in exchange. As to the other transactions, he contends that they ought to be considered as concluded by settlements.

The general replication was put in, and a commission to take testimony having been issued, William W. McClellan was examined by the defendant (now appellant) upon interrogatories touching the consideration of the assignment to the complainant, and also touching his own motive in making said assignment. Having testified fully upon the former branch, and stated that the conveyance was complete and absolute, that he had no interest in the suit, and had entered into possession and enjoyment of the property conveyed to him by the complainant as the consideration, he was asked by the defendant's solicitor, " Was it your object to make yourself qualified as a witness to testify in this case?" and he answered that such was his object, and he wished to part with any interest he might have in order to make himself a disinterested witness. Further examined on the part

Banks *vs.* McClellan.

of the complainant, he testified that he wished to part with any interest he had in the claim, so that in the event of his being called on as a witness he might testify in the case ; and that he did not agree with his sister to testify, but stated to her that if he should be called on as a witness he would testify to the truth of the transaction. He further stated that he had no interest of any sort in testifying in the transaction.

Upon the return of the commission, the complainant filed an exception to all the testimony of William W. McClellan on his examination on the part of the defendant touching his object or motive for making the assignment of claim and conveyance of interest to the complainant.

The defendant excepted to the admissibility of the testimony of said William W. McClellan.

The cause being submitted, a decretal order was signed by the Court below, (MARTIN, J.,) directing the auditor to state accounts, and this appeal is taken from the action of the Court in reference to the account stated by the auditor.

This cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*I. Nevitt Steele* and *Oliver Miller* for appellant.

1st. The first question in the case is as to the admissibility of the testimony of William W. McClellan ; without his testimony the whole case of the appellee fails. The complainant in the bill had no interest in the matters complained of therein, until the assignment to her by this witness was executed : This assignment was put on record the very day the bill was filed, and the witness admits on his cross-examination that his object in making it, was to qualify himself as a witness to testify in the cause. The

case is peculiar in several respects. This witness could have filed the bill in his own name, but he would then be disqualified as a witness. As the law then stood he could not have proved his case. As the law *now* stands, *both parties* could have testified. Under the law then existing, the defendant's answer under oath could not be received as evidence, because the bill did not call upon him to answer under oath. The effect, therefore, of this assignment if sustained, is to make another party complainant, who could so frame her bill as to avoid the effect of the defendant's answer as evidence, and thus get rid of *him* as a witness, and make the party really interested a competent witness in his own case. It is conceded that when *in the course of a trial* it is shown that a witness is interested, the decisions of this Court have held that a release, though made for the avowed object of making him competent, will have that effect, but they have at the same time said, that if it were a new question they would condemn the practice. Here the assignment was made just before the suit was instituted, and for the purpose of having it instituted, and making the assignor a witness in the suit about to be commenced, it is submitted on the part of the appellant that it is against the policy of the law, and ought not to be sustained; that it is wanting in *bona fides*, and was in fact executed for a purpose which the Court should condemn rather than sanction. Act of 1829, ch. 51. *Crawford vs. Brooke*, 4 *Gill*, 213. *Pegg vs. Warford*, 7 *Md. Rep.*, 582.

2nd. But assuming that McClellan was a competent witness, the next question is, can the Court upon that evidence declare the absolute deed of May 28th, 1841, a *mortgage?* The proposition that it is competent for a Court of Equity upon the allegation and *proof of fraud*, to decree an absolute deed to be a mortgage, is not disputed. But in such a case the Courts have uniformly *held* that *the proof* upon which it so acts must be clear, strong, unequivocal. There is

nothing in this case to exempt it from the operation of this rule as to proof. The deed is *absolute on its face*, was placed on the public records of the county the day after its execution, and *nine* years after its execution the grantee conveyed the property to a *bona fide* purchaser, whose deed was also spread upon the record, and now more than *eighteen years* after its execution, the effort is to show that it was not what it purports to be, but an entirely different instrument.—The proof to sustain such an allegation after such a lapse of time, ought to be of the strongest character. There is no such proof, and no such corroborating circumstances here, for :

1st. The witness though not, as now assumed, legally incompetent, is nevertheless liable to suspicion. All the cases, whilst holding that a release may restore the *competency* of a witness, declare that the fact of the execution of such a release for the avowed object of making him a witness, *affects* the *credibility* of the witness. The evidence in such cases comes from a tainted source. The Court will regard this circumstance in this case, and will be slow to give implicit credence to a witness, who has assigned his claim to *his sister*, for the very purpose of having this suit brought, and with the avowed object of becoming a *witness* therein. The whole record shows that he was the instigator and prime mover in getting up these proceedings, and that he is prejudiced, biased and deeply *interested* (in every sense of the word except legally,) therein, cannot be doubted.

2nd. The utter absence of all *corroborating circumstances* to sustain the testimony he has given, is also to be strongly weighed by the Court. Indeed, the attendant circumstances are all the other way. The fact that the proffered *mortgage* was absolutely refused, that there was no such *inadequacy of price*, (a circumstance strongly relied on in other

cases,) as to warrant the Court in saying the parties did not intend this to be an absolute deed; and finally, the fact that during all these *eighteen years*, the matter was suffered to rest, and Banks and his grantee permitted to remain in absolute and uncontrolled possession of the property, without any claim, demand or disturbance on the part of McClellan, though the Record shows that during this period there had been various transactions, and even strong controversies and disputes between these parties; all these facts we say show that but little credit can be given to his bare assertion made at this late day, that the deed was a mortgage and not what it purported to be on its face.

3rd. The fact testified to by this witness himself, that as late as October, 1858, he tendered to Banks $2,300 in full satisfaction of *all* his claims, and demanded from him a reconveyance of the Purcell annuity, and a release of the mortgage of May 6th, 1850, and that he made this offer for the purpose of having *all matters settled*, is utterly inconsistent with the idea that he then thought that he had any claim on account of this deed of 1841. His purpose in making the offer was to have *all matters* settled between him and Banks, and what he then *demanded* from Banks was, not *an account* of the Gibson annuity, but simply a reconveyance of the Purcell annuity, a release of the mortgage of 1850.

We insist, therefore, that the proof entirely fails to come up to the standard required by the authorities to warrant a Court in treating as a mortgage an absolute conveyance like this; that, upon such proof, so to treat it would lead to infinite mischief by shaking security in titles, and disturbing faith in the most solemn conventions of parties.— *Thompson vs. Banks*, 2 *Md. Ch. Dec.*, 432. *Watkins vs. Stockett*, 6 *H. & J.*, 444. *Brogden vs. Walker*, 2 *H. & J.*, 285. *Farrell vs. Bean*, 10 *Md. Rep.*, 230. *Russell vs. Southard*, 12 *How.*, 147. 1 *Russell on Cr.*, 180.

4th. Assuming again the deed of May 28th, 1841, is to be treated as a mortgage, and that Banks is bound to account for the annual rent of $100 received by him, and for the purchase money for which he sold it to Gibson on the 25th of May, 1850, on what basis is that account to be taken? We say that it is to be treated as a mortgage for $1,500, and the appellant is to be charged with that sum as of the date of the mortgage, and be credited with the annual payment of the ground rent, and the proceeds of the property when sold. This was the solemn agreement between the parties expressed upon the face of the mortgage itself, and not contradicted by the testimony or controverted by the bill. There was no *usury* in this agreement, and the bill does not assail this transaction on the ground of usury.— Banks had a perfect right to *sell* his stock *at par*, and it was perfectly competent for him to take a mortgage to secure the payment of the sum for which he sold it, and it was perfectly competent for McClellan to agree to buy the stock at that rate, and to execute the mortgage. The plea of usury, even if relied on, would not avail against such an agreement as that. The only usury in this matter consists in the agreement to receive, and in the receiving of the $100 *as interest* on the $1,500 so loaned; and this, by the accounting, in so far as it exceeds the legal rate of six per cent. on the $1,500, Banks must lose, if this deed is to be treated as a mortgage. This transaction was not a *loan* of this stock, to be *returned* with usurious interest, but a sale of it at a *fixed price*, agreed upon between the parties. The account is therefore wrong, in making the $1,350 the price at which McClellan *subsequently sold* the stock, the basis of the accounting. *Williams vs. Reynolds,* 10 *Md. Rep.,* 57. *McKim vs. White,* 2 *Md. Ch. Dec.,* 510.

5th. Again, as to the transaction of May 6th, 1850. Here the consideration of the mortgage of that date is

assailed as usurious, and the agreement upon which that mortgage is based is attached as founded in usury. Now, what was the state of the case between these parties at that time? and what was it competent for them to contract about? It must be remembered that under our present usury laws the excessive interest alone is forfeited—the agreement is not annulled—it stands in all respects valid, save in regard to the excess of interest above the legal rate. At the time this agreement was made there was due to Banks six years interest on the $1,000 mortgage, of which he had not received a single cent. It was competent for the parties to agree that he should receive interest at the legal rate on the interest so due, and an agreement to receive more than the legal rates on such interest forfeits only the excess above six per cent. Again, it was perfectly competent for them to agree that the taxes which had been paid by Banks on this mortgage should be refunded to him with legal interest thereon from the time they were paid. A stipulation in the mortgage that the taxes on the mortgage debt should be paid by the mortgagor would not have been usurious, nor will an agreement to repay the money that the mortgagee may have paid for such taxes with legal interest thereon be subject to the imputation of usury. All that the plea of usury, under the present law of the State, does, is to purge the contract of excessive interest, and this was all that a party could do, under former laws, when he went into a Court of Equity as complainant, seeking relief against a contract on the ground of usury. The accounts, therefore, are wrong in striking out the interest on the interest at the legal rate and the amount paid for taxes on the mortgage debt with legal interest thereon. *Fitzhugh vs. McPherson,* 3 *Gill,* 408. *Gwynn vs. Lee,* 9 *Gill,* 137. *Baugher vs. Nelson,* 1 *Md. Ch. Dec.,* 299. *Bandell vs. Isaac,* 13 *Md. Rep.,* 202. *Robertson vs. Homestead Association,* 10 *Md. Rep.,* 397. *Jordan vs. Trumbo,* 6 *G. & J.,* 203.

That the assignment from William W. McClellan to the appellee, Eliza McClellan, gives her no standing in a Court of Equity upon which she can maintain this suit. Because said assignment was not *bona fide* under the Act of 1829, chap. 51, and was in itself inequitable and against the policy of the law. *Powles vs. Dilley,* 2 *Md. Ch. Dec.,* 153. *Glenn vs. Randall, Id.,* 222, 223.

Because the assignment, even if valid, assigns to her nothing which gives her a right to make the claims and set up the defences relied on in the bill. *Dakin & Pomeroy vs. Kraft,* 9 *Gill,* 6. *Gordon vs. Downey,* 1 *Gill,* 41. *Dewolff vs. Johnson,* 10 *Wheaton,* 368. *Trumbo* vs. *Blizzard,* 6 *G. & J.,* 18. Act of Assembly, 1829, chap. 51. Act of Assembly 1845, ch. 352.

Equity will not relieve or assist in enforcing the payments of a penalty or forfeiture. 2 *Md. Ch. Dec.,* 510.

*A. W. Machen* for appellee.

It is submitted on behalf of the appellee that there is no error in the decree.

1. It is a perfectly well settled doctrine of equity that it is competent to show by parole evidence that a conveyance, absolute on its face, was intended at the time to operate as a mortgage. If fraud or mistake are averred— as here—the admissibility of the evidence does not admit of question. *Thompson vs. Banks,* 2 *Md. Ch. Dec.,* 430. *Dougherty vs. McColgan,* 6 *G. & J.,* 281. *Babcock vs. Wyman,* 19 *How.,* 289. *Russell vs. Southard,* 12 *How.,* 147. *Morris vs. Nixon,* 1 *How.,* 118. *Bank of Westminster vs. Whyte,* 3 *Md. Ch. Dec.,* 508. *Hughes vs. Edwards,* 9 *Wheat,* 495. *Wesley vs. Thomas,* 6 *H. & J.,* 27. 2 *White and Tudor, Le. Ca.,* 877, *and Amer. Note. Adams. Eq.,* 111.

That the assignment of the Bank Lane ground rent

was meant as a security for a loan is proved by the testimony of W. W. McClellan, but is also indicated by all the surrounding circumstances. It cannot be controverted that Mr. McClellan's immediate object was to raise money. This being so, none but an idiot (which it is not pretended that he was) would make an exchange of a marketable commodity immediately and certainly convertible into $1,600 or upwards for another which was heavy at $1,350. That a loan was intended is also shown by the mortgage contemporaneously acknowledged. Mr. Banks himself is compelled to admit that the McClellans came to him for a loan, and he fails utterly to show the motive by which he prevailed upon them to sell to him a ground rent for which anybody else would readily give $1,600 or $1,700 for gas stock of which the par value was but $1,500, while it would bring in the market only $1,350. That Mr. Banks' repugnance to the relation of lender was not invincible is shown by all the subsequent transactions between the parties.

2. No valid objection can be urged to the testimony of W. W. McClellan. *National Fire Insurance Co. vs. Crane,* 16 *Md. Rep.,* 294. *Reynolds vs. Manning,* 15 *Md. Rep.,* 510. *Pegg vs. Warford,* 7 *Md. Rep.,* 582.

3. As between borrower and lender, and under such circumstances as are found in this case, there had been no such lapse of time as could shelter the appellant from inquiry. Indeed, with the exception of the Bank Lane annuity, all the transactions in question are so interwoven with one another that the investigation of what is justly due under the last mortgage necessarily involves the unravelling of the whole web of usury.

But if laches or the statute of limitations could ever have been set up, the appellant is precluded from such defences by the agreement under which his answer was filed. *See also Trumbo vs. Blizzard,* 6 *G. & J.,* 23. *Dix vs. Van Wyck,* 7 *Hill,* 522, 525. *Cole vs. Savage,* 10 *Paige,*

583, 591. *Morris vs. Floyd,* 5 *Barb.,* 136. *See Scrivner vs. Scrivner,* 1 *H. & J.,* 743, in answer to appellant's 4th point.

On the construction of the Act of 1845, chap. 352. *See Baugher vs. Nelson,* 9 *Gill,* 299. *Wilson vs. Hardesty,* 1 *Md. Ch. Dec.,* 66, 69. *Gibbs vs. Cunningham,* 1 *Md. Ch. Dec.,* 45.

In answer to the counsel of the appellant the appellee's counsel argued :

That the act of 1829, chap 51, has no operation where the question is upon the enforcement of an equitable right in a Court of Equity. The Act was remedial, not restrictive. *Crawford vs. Brooke,* 4 *Gill,* 222. It is plain that the assignment passed all W. W. McClellan's equitable and real interest in the claim and subject matter to the complainant. But for such parting with all right and claim by the assignor, he would remain interested and incompetent to testify, which it is conceded he is not. *Pegg vs. Warford,* 7 *Md. Rep.,* 582. *Reynolds vs. Manning,* 15 *Md. Rep.,* 526. Not only is Eliza A. McClellan properly complainant, but she is the only person who could be complainant. William W. McClellan could not even be made party defendant. *Hoye vs. Johnston,* 2 *Gill,* 291. Secondly, *Crawford vs Brooke,* 4 *Gill,* 213, merely decided that the circumstance that the assignment was made for the purpose of enabling the assignor to testify was competent evidence to go to the jury as tending to show want of *bona fides* under the Act—not that it was conclusive : all in the opinion of the Court that went beyond this, (relating to the second exception in that case,) was *dictum.* Where the right to reject the usurious part of the interest has not been waived by the assignor it passes to his assignee. *Trumbo vs. Blizzard,* 6 *G. & J.,* 23. *Lloyd vs. Scott,* 4 *Pet. Dix vs. Van Wyck,* 2 *Hill,* 522, 525. *Cole vs. Savage,* 10 *Paige,* 583, 591. *Morris vs. Floyd,* 5 *Barb.,* 136. The

position of the debtor or his assignee, when complainant,. is not altered by the Act of 1845, chap. 352, which was merely remedial. *Baugher vs. Nelson,* 9 *Gill,* 299, 307, 308. *Wilson vs. Hardesty,* 1 *Md. Ch.,* 66, 69.

WEISEL, J., delivered the opinion of this Court.

The complainant, Eliza A. McClellan, the appellee in this Court, claims as assignee of her brother, William W. McClellan.

The subject matters of the assignment are :

1st. All the claim, interest and benefit of the assignor in the sum of thirty-three hundred dollars in Baltimore City stock, deposited with Messrs. Brown and Brune, at- torneys of Henry V. Ward, to whom the assignor sold certain real estate in Baltimore, on the corner of Baltimore and Charles streets, on which Banks, the appellant, held a mortgage, and claimed an amount, which was disputed ;. the said stock for $3,300 being withheld by Ward, the purchaser, to abide the determination of said dispute, and the assignee undertaking to satisfy the said claim of the mortgage as it may be legally or equitably determined.

2nd. All the claim of the assignor against said Banks for or on account of the value of a yearly rent of one hundred dollars, conveyed by him and wife to said Banks by deed of the 28th of May, 1841, and all the agreements between them concerning said rent, and relating to the claim or right of the grantors to have the same reconveyed to him, the said McClellan, upon his paying a certain sum for so much in value lent to him by Banks, for which said con- veyance was meant only as a security. This property is. on Bank lane, in said city, and particularly described in the deed of said McClellan and wife to said Banks, exhib- ited with the bill and marked Exhibit E, No. 2.

3rd. All the right, title, claim, interest and estate, legal and equitable, of the assignor, in and to, and all his right

under an agreement with said Banks for a reconveyance and release of the rent and reversion of a piece of ground in said city, on Baltimore street, near Green street, leased by said Banks to John T. Purcell, and to and in the rent reserved on said lease, and the reversion of and in the ground; the said assignee (the complainant) to satisfy said Banks the debt due to him for which said property was originally mortgaged by Catharine McClellan.

The consideration of this assignment, besides the undertakings by said Eliza to pay said mortgage claims, was a conveyance by her to said William of certain leasehold property in the city of Baltimore, executed a short time before said assignment to her, viz: on the 9th of June, 1859, and the said assignment was made without any recourse whatever to said William W. McClellan, his heirs, executors or administrators.

The Record contains written evidence that the property out of which the lease to Purcell was carved, and also the reversion in the portion covered by that lease, (which is the third subject matter of the assignment,) were to be reconveyed to William W. McClellan, upon payment of the money and interest thereon, to secure which said property was originally mortgaged by Catharine M. McClellan. The appellee, as assignee of the equity of redemption, is entitled to the aid of a Court of Chancery to redeem said property by paying the mortgage debt and simple interest thereon, or by bringing the same into Court to be paid to the said Banks. This she proffers in the bill to do, and prays for its reconveyance to her.

In order to extricate the $3,300 city stock held on deposit by Messrs. Brown & Brune, to indemnify Ward, the appellee undertakes by the bill to litigate with Banks touching the amount due him on his mortgage on the property at the corner of Baltimore and Charles streets. As by the terms of the assignment to her, and as part of

its consideration, she engaged to pay whatever might be found due on that mortgage, we think she can maintain her position in a Court of Equity for this purpose. That claim is a lien upon the city stock assigned to her, and its true amount was a matter of controversy. She alleges that the consideration of the mortgage was usurious, and that the sum claimed by Banks should be purged of the usury and thereby largely reduced, as well as by deductions for certain charges for taxes, for which the mortgagor was not bound. To reduce it still further, she claims an account touching the transaction which forms the second subject matter of the assignment to her, the conveyance of the property on Bank lane, which, it is alleged in the bill, was intended as a mortgage between her brother and Banks, but which the latter, in fraud of his agreement, insisted on treating as an absolute conveyance, and afterwards sold and conveyed the property to a third party.

The consideration of these questions involves the exceptions by the defendant below to the competency of William W. McClellan as a witness, and the admissibility of his proof ; and also the objection urged in the argument to the ability of the complainant to maintain this suit in her own name as assignee of these subjects of contest.

We regard William W. McClellan as divested of all interest in the subjects in controversy, by the assignment to his sister and its terms, and therefore competent to be a witness for her, on the authority of *Crawford vs. Brooke,* 4 *Gill,* 217. *Pegg vs. Warford,* 7 *Md. Rep.,* 603. *Reynolds vs. Manning,* 15 *Md. Rep.,* 518, 522. *Nat. Fire Ins. Co. vs. Crane,* 16 *Md. Rep.,* 294.

We also regard these matters of the assignment as not unmixed choses in action for the payment of money, and therefore as not embraced within the terms of the Act of 1829, ch. 51. See *Gordon vs. Downey,* 1 *Gill,* 41. *Crawford vs. Brooke,* 4 *Gill,* 221, 222.

As assignee of the mortgagor's rights in reference to the ground rent and reversion in fee in the property on Bank lane, if the transaction in relation to it between her brother and Banks was intended merely as a security for a loan, the appellee can resort to a Court of Equity for a decree declaring the conveyance a mortgage, and directing the reconveyance of the property upon payment of the amount properly due, (or if the property has passed beyond her reach, and the mortgage be overpaid,) ordering an account and repayment of the difference.

Much of the controversy in this case relates to this transaction, which originated in 1841, more than eighteen years before the filing of the bill. Mr. McClellan is sufficiently distinct in stating that it was understood and agreed between himself and Banks, that the Gas Company stock received by the former was but a loan, and not a purchase, and the conveyance of the ground rent to the latter, absolute on its face, was to be regarded only as a security, and the only corroborating circumstance stated by the witness is that at the end of three years Banks, being applied to, consented that the loan might continue. But to the mind of the Court all the other circumstances militate against the idea of a loan and security. The length of time, (which may be regarded among the probabilities to be taken into consideration with the proof, although by agreement it was not to be relied upon as a defence,) the various subsequent accounts between the parties, when no reference was made to any claim on this account; the fact that the property was the estate of Mrs. McClellan, who joined her husband in the conveyance, and to whom, and not her husband, the reconveyance, if agreed upon, should have been stipulated to be made; and that no notice whatever was taken of this claim by McClellan in 1858, when he tendered to Banks the sum of $2,300 in full satisfaction, and demanded a reconveyance of the Purcell property, and

a release of the mortgage of the 6th May, 1850, without any demand for a reconveyance of the Bank lane property, or any repayments on that account, are sufficient to satisfy the Court that whatever may have been the understandings originally between the parties, McClellan acquiesced in the absolute nature of the transaction, and waived all further claims to this property. We therefore think that the appellee is not entitled to an account of and concerning the matter and moneys alleged in reference to this branch of the assignment to her, and that the conveyance to Banks by William W. McClellan and wife of the 28th of May, 1841, being "Exhibit E, No. 2," with the bill of complaint, should be held and treated, as it is upon its face, an absolute deed of conveyance.

It is proved that the consideration of the mortgage of May 6, 1850, for $1,288.60, was usurious. Money due for interest, may by agreement be changed into principal to bear interest *in future*, but not otherwise. In this case interest was not only calculated on interest for several years in arrear, but the amount so added was doubled. We consider that the charges for taxes on the mortgage, with simple interest on each item from the time it was paid, are allowable, Mr. McClellan having agreed to pay them, and the law authorizing such payments without incurring usury. The statement of "Exhibit E, No. 7," by striking out the item of $6.45, second charge, being interest on interest, and adding in lieu of it interest at the rate of six per cent. on $1,000 from 8th January, 1850, to 6th May, 1850, and also adding the tax items in "Exhibit E, No. 6," with legal interest on each from the time when they were respectively paid to May 6, 1850, would present the proper sum as the consideration of that mortgage; and that sum, with six per cent. interest on it from the date of

said mortgage, May 6, 1850, to the present time, would show the amount due upon it.

The assignee, standing in legal privity with Wm. W. McClellan, can avoid the contract for the excess of usury, (*Dix vs. Van Wyck*, 2 *Hill*, 522,) and is entitled to the proper reduction on this mortgage, that the true lien on the $3,300 city stock, assigned to her, may be thus ascertained and determined, to enable her to perform her part of the contract with her brother in this respect, and by her payment of which to relieve the mortgaged premises from the incumbrance in favor of Ward, the purchaser.

It follows from these views, that the exceptions to all the audits should have been sustained; and that the amount on both outstanding mortgages, which the assignee undertook to discharge, should be ascertained by the auditor conformably to this opinion, and that the decree should direct a reconveyance of the one to the appellee, and the release of the other to Ward, upon her paying the amounts, or bringing the same into Court, to be paid to the appellant; and we are further of opinion that each party should pay his respective costs in both Courts.

The decree below will be reversed, and the cause remanded, with instructions for an audit, or audits, and a decree conformably to the views expressed in this opinion.

> *Decree reversed and cause remanded,*
> *each party to pay his own costs in both Courts.*